## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CANDICE HERRERA, ARIANNA
LONDON, ASHLEY HURTADO, and
T.H., a minor by and through her father and
guardian VINCENT HERRERA, and all others
similarly situated,

       Plaintiffs,

vs.                                                                              No. CIV 11-0422 JB/KBM

SANTA FE PUBLIC SCHOOLS, SANTA FE
PUBLIC SCHOOLS BOARD OF EDUCATION,
BARBARA GUDWIN, GLENN WIKLE,
LINDA TRUJILLO, FRANK MONTANO,
STEVEN J. CARRILLO, in their official
capacities as members of the Santa Fe Public
Schools Board of Education, BOBBIE J. GUTIERREZ,
in her official capacity as Superintendent of Santa Fe Public
Schools, MELANIE ROMERO, individually and in her
official capacity as Principal of Capital High
School, ROBERT STEPHENS, in his official capacity
as Principal of Santa Fe High School as a necessary party
for complete relief, ASI NEW MEXICO, LLC,
JOHN/JANE DOE Nos. 1-8,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion to Stay Discovery on

the Basis of Qualified Immunity, filed Nov. 14, 2012 (Doc. 115)("Motion to Stay").  The Court held

a hearing on November 19, 2012.  The primary issues are: (i) whether, in light of the Defendants

failure to file this Motion to Stay until after there has already been considerable discovery, the Court

should stay discovery until it rules whether Defendant Melanie Romero is entitled to qualified

immunity; and (ii) whether the Court should allow the Plaintiffs to depose a witness whom they

assert is necessary to respond to Romero's qualified immunity defense.  The Court will grant the Motion to Stay, because Romero is entitled to be protected from the burdens of the lawsuit until the Court rules on her qualified immunity defense.  The Court will not permit the Plaintiffs to take Dr. Melville Morgan's deposition at this time, because the Plaintiffs have not proven that his testimony is necessary to the Court's decision whether Romero is entitled to qualified immunity.

## FACTUAL BACKGROUND

The Court issued a temporary restraining in this case in May, 2011.  In that Memorandum Opinion and Order, the Court made findings of fact.  See Herrera v. Santa Fe Pub. Schs., 792 F. Supp. 2d 1174 (D.N.M. 2011).  The Court incorporates by reference those findings of fact here and will provide a short discussion of those facts relevant to the disposition of this Motion to Stay.

On April 16, 2011, Plaintiffs Arianna London, Ashley Hurtado, Candice Herrera and her younger sister, T.H., attended Capital High School's prom at the Santa Fe Convention Center. Before entering the prom, a security officer, an employee of Defendant ASI Security, New Mexico, with whom the Defendant Santa Fe Schools Board of Education had contracted to provide security at school events, searched Herrera, London, Hurtado, and T.H..  The search of Herrera included patting her down, touching her arms, her stomach, cupping and shaking her breasts, and lifting up her skirt to mid-level from the floor to pat down her legs.  The Plaintiffs filed this case against the defendants alleging that the pat-down searches violated their civil rights.

Included in the exhibits at the trial was the Santa Fe Public Schools Code of Conduct.  Santa Fe Public Schools Deputy Superintendent Dr. Melville Morgan helped write the Code of Conduct. The Code of Conduct included a section regarding pat-down searches at school events, entitled "Scope and Extent of Searches of Students."  Dr. Morgan attended the prom at which the students were searched.

## PROCEDURAL BACKGROUND

On November 13, 2012, Defendant Melanie Romero filed her Individual School Defendant Melanie Romero's Motion for Summary Judgment on Count I of Second Amended Complaint Based Upon Qualified Immunity. See Doc. 113 ("Romero's Summary Judgment Motion"). On the same day, Hererra and T.H., and co-Plaintiffs Arianna London and Ashley Hurtado, filed their Plaintiffs' Unopposed Motion to Voluntarily Dismiss Counts II-V Against the School Defendants, filed Nov. 13, 2012 (Doc. 114)("Motion to Dismiss"), moving to dismiss Counts II-V of their Second Amended Complaint, filed Sept. 18, 2012 (Doc. 100)("Second Amended Complaint") against Defendants Santa Fe Public Schools Board of Education; Barbara Gudwin, Glenn Wikle, Linda Trujillo, Frank Montano, and Steven J. Carrillo, in their official capacities as members of the Santa Fe Board of Education; Bobbie J. Gutierrez, in her official capacity as Superintendent of Santa Fe Public Schools; Melanie Romero, in her official capacity as Principal of Capital High School; and Leslie Kilmer, in her official capacity as Principal of Santa Fe High School. See Motion to Dismiss at 1. On November 14, 2012, Romero, Santa Fe Public Schools Board of Education, Gutierrez, and Kilmer (collectively "Defendants") filed their Motion to Stay. As grounds for their Motion to Stay, the Defendants state: "Because the defense of qualified immunity has. . . been raised, Melanie Romero is entitled to a determination by this Court of the qualified immunity question before resuming the burdens of discovery and litigation. Furthermore, she is entitled to an Order staying further discovery until . . . the qualified immunity issue is resolved." Motion to Stay at 2. The Defendants contend that, because the purpose of qualified immunity is to protect public officials from the burdens of trial, it extends to protect them from the burdens of discovery as well. See Motion to Stay at 2 (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)). They assert: "Accordingly, when the defense is raised by way of a motion to dismiss or for summary judgment,

the Court should stay all discovery until the immunity issue is resolved."  Motion to Stay at 2-3 (citing Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992)).  The Defendants contend that it is unlikely the Plaintiffs can make the required showing for additional discovery to respond to the Motion to Stay, because "extensive discovery has already been conducted, including both written discovery and nineteen depositions, including fourteen taken by the plaintiffs."  Motion to Stay at 3.  The Defendants ask the Court to Grant the Motion to Stay as "[a]dditional discovery, litigation and liability would be an undue burden upon Defendant Melanie Romero."  Motion to Stay at 3.

On November 16, 2012, the Plaintiffs filed Plaintiffs' Opposition to Defendant's Motion to Stay Discovery on the Basis of Qualified Immunity.  See Doc. 121 ("Motion to Stay Response").  The Plaintiffs argue that "[t]here are at least three reasons to deny Defendants' Motion."  Motion to Stay Response at 1.  They first argue that, because the Defendants filed the Motion to Stay eighteen months after the Plaintiffs filed their action, and a year after discovery began, the purpose of the Motion to Stay discovery -- to avoid unnecessary exposure to burdensome discovery -- would not be served.  See Motion to Stay Response at 1.  The Plaintiffs assert that the majority of discovery has already occurred, and the "Defendants have allowed Romero to be exposed to that litigation without complaint or any request to limit the discovery."  Motion to Stay Response at 2.  The Plaintiffs contend that "[g]iven what has occurred in the litigation and the burdens Defendant Romero has already faced there is no reason for a stay."  Motion to Stay Response at 2.  The Plaintiffs assert: "Most pertinently, all discovery directly related to Defendant Romero, including her deposition and any written discovery requests that would require her to search for and produce responsive information have been completed."  Motion to Stay Response at 2.  The Plaintiffs' second argument why the Court should not grant the Motion to Stay is that there is no reason to stay all discovery where "[t]he pending qualified immunity motion only relates to Defendant Romero."

Motion to Stay at 3.  The Plaintiffs contend that other federal courts have allowed discovery to proceed against defendants "not directly implicated by a pending motion for qualified immunity" and contend that the Court should thus allow discovery to continue for the other defendants.  Motion to Stay Response at 3 (citing Seeds of Peace Collective v. City of Pittsburgh, 2010 WL 2990734 (W.D. Pa. July 28, 2010); S.D. v. St. Johns Cnty. Sch. Dist., 2009 WL 4349878, at **4-5 (M.D. Fla. Nov. 24, 2009)).  The Plaintiffs assert that the discovery they intend to conduct in the remainder of the proceeding does not require Romero's "direct participation."  Motion to Stay Response at 3.  The Plaintiffs' third argument is that, at a minimum, the Court should allow the Plaintiffs to take Dr. Morgan's deposition, because they require Dr. Morgan's testimony "to present all facts essential to support their opposition to Defendant Romero's qualified immunity motions."  Motion to Stay Response at 4.  The Plaintiffs assert that: "One of the exceptions to the general rule that discovery not be allowed against a government official who has filed a motion for qualified immunity is when, under the standard articulated in Federal Rule of Civil Procedure 56(d), a plaintiff requires discovery to defend against the assertion of qualified immunity."  Motion to Stay Response at 4 (citing Todd v. Montoya, 20111 WL 5238900 (D.N.M. Oct. 4, 2011)(Browning, J.)).  The Plaintiffs state that Dr. Morgan instructed Romero about the school's expectations regarding pat-down searches, and was involved in the development of the underlying policies, and that his deposition testimony regarding information that he provided Romero during the instruction is "essential to a complete record relevant to Defendant Romero's pending motion."  Motion to Stay Response at 4.  The Plaintiffs thus ask the Court to deny the Defendants' Motion to Stay.  See Motion to Stay Response at 5.

The Court held a hearing on the Motion to Stay on November 19, 2012.  The Court stated that the Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have provided strong language directing district courts to stay discovery when a qualified

immunity defense is asserted, and that the Court is not inclined to create an exception to that presumption based on the circumstances in this case.  See Transcript of Hearing (taken Nov. 19, 2012) at 3:5-16 (Court)("Tr.").[1]  The Court stated that it would, of course, let both parties speak on their behalf in regards to the Motion to Stay on any point on which they wished to speak, but that the Court was most interested in hearing the parties' arguments regarding Dr. Morgan's testimony and whether it was essential to the Plaintiffs' response to Romero's Summary Judgment Motion. See Tr. at 2:24-4:1 (Court).  The Plaintiffs asserted that their reading of Tenth Circuit and Supreme Court precedent regarding a motion to stay discovery is that, although there may be a presumption in favor of granting the stay, district courts still have discretion to "allow discovery to go forward where the discovery is not overly broad or broad-reaching during the pendency of the qualified immunity motion." Tr. at 5:19-6:4 (Colfax).  The Plaintiffs argued that this case is one in which the Court should exercise that authority and deny the stay altogether, because the purpose of the stay would not be served here, as the Defendants have asserted the qualified immunity defense too late in the case.  See Tr. at 6:5-21 (Colfax).  The Plaintiffs contended that, if the Court grants the stay, it should not grant the stay in regard to ASI Security, because discovery as to it would have no effect on Romero.  See Tr. at 6:22-7:5 (Colfax).  In regard to Dr. Morgan's deposition, the Plaintiffs argued that, because the gravamen of Romero's Summary Judgment Motion is that Romero and the schools were ignorant of the constitutional bounds of a pat-down at a school prom, Dr. Morgan's testimony would evidence Capital High School's knowledge as he helped draft and instruct Romero about the code of conduct.  See Tr. at 7:10-22 (Colfax).  The Plaintiffs noted that, without Dr. Morgan's testimony regarding the extent of his instruction of Romero in the constitutional bounds

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

of a school pat-down, the Plaintiffs are left solely with Romero's self-serving deposition testimony. See Tr. at 8:6-15 (Colfax). The Court inquired, assuming that there is a genuine issue of material fact regarding what Dr. Morgan told Romero regarding the constitutionality of the pat-downs, how the Plaintiffs would be able to overcome the qualified immunity defense test's clearly established prong. See Tr. at 8:16-23 (Court). The Plaintiffs contended that, if Dr. Morgan's testimony revealed that Romero had notice that the pat-downs were unconstitutional, and the schools had knowledge of the constitutionality of the pat-downs, "that they knew that they could not conduct the pat-down searches in these circumstances, and then went ahead and did it anyway . . . . would answer the clearly established prong." Tr. at 9:2-11 (Colfax). In response to the Court's inquiry regarding what the Plaintiffs anticipated was going to be Dr. Morgan's testimony, the Plaintiffs asserted that they anticipated that he would testify that he believed the pat-downs were constitutional. See Tr. at 10:14-11:1 (Court, Colfax).

The Defendants disagreed that they waited too long to raise the qualified immunity defense, because they were only able to finish deposing the Plaintiffs in late August of 2012, because the Plaintiffs are still enrolled in school during the school-year. See Tr. at 11:12-12:7 (Coppler). In regards to the necessity of Dr. Morgan's deposition testimony, the Defendants contended that his testimony is inapposite to the clearly established prong of qualified immunity, because that prong is an objective standard; the Defendants' knowledge or belief whether the pat-downs were constitutional is irrelevant. See Tr. at 12:16-12:24 (Coppler). The Defendants argued that the Court should not grant the stay of discovery to Romero, but then allow discovery to proceed against ASI Security, because Romero's participation in any of the depositions would continue to be necessary until the Court rules on the qualified immunity defense. See Tr. at 13:8-18 (Coppler). The Defendants asserted that Dr. Morgan did not observe any of the pat-downs, and that they anticipated

his testimony would be that he believed the searches to be constitutional.  See Tr. at 13:22-14:9 (Coppler).  The Defendants argued that, if the Court decides to grant the stay, and if the Plaintiffs believe that Dr. Morgan's testimony is necessary for their response to Romero's Summary Judgment Motion, they may proceed under the Federal Rules of Civil Procedure to file an affidavit to show that Dr. Morgan's testimony will be relevant and is necessary.  See Tr. at 14:10-16 (Coppler).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).  "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'"  Roybal v. City of Albuquerque, No. CIV 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation."  Pearson v. Callahan, 555 U.S. 223, 232 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. 818).  When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden."  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  The plaintiff must demonstrate on the facts alleged that: (i) the defendant's actions violated his or

her constitutional or statutory rights; and (ii) the right was clearly established at the time of the alleged unlawful activity.  See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

      In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he did violated that right.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  In determining whether the plaintiff has met his or her burden, the court construes the facts in the light most favorable to the plaintiff as the non-moving party.  See Scott v. Harris, 550 U.S. 372, 378 (2007).  A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."  Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001)).  See Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  On the other hand, the Supreme Court of the United States has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001)(quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

      The Supreme Court recently revisited the proper procedure for lower courts to evaluate a

qualified-immunity defense.   In <u>Pearson v. Callahan</u>, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."   555 U.S. at 236.   The Supreme Court also noted in <u>Pearson v. Callahan</u> that, while no longer mandatory, the protocol outlined in <u>Saucier v. Katz</u> would often be beneficial.   <u>See</u> 555 U.S. at 241.   Once the plaintiff has established the inference that the defendant's conduct violated a clearly established constitutional right, a qualified-immunity defense generally fails.   <u>See</u> <u>Cannon v. City & Cnty. of Denver</u>, 998 F.2d 867, 870-71 (10th Cir. 1993).

The Supreme Court has suggested that, to avoid unnecessary exposure to burdensome discovery, the preferred practice is for the government officials to move to dismiss the action based on qualified immunity before discovery is ordered.   <u>See</u> <u>Crawford-El v. Britton</u> 523 U.S. 574, 598 (1998).   There are, however, exceptions to the rule that no discovery be allowed when government officials claim qualified immunity.   The officials are not protected from all discovery, "'but only from discovery which is either avoidable or overly broad.'"   <u>Garrett v. Stratman</u>, 254 F.3d 946, 953 (10th Cir. 2001)(quoting <u>Maxey v. Fulton</u>, 890 F.2d 279, 282 (10th Cir. 1989)).

In <u>Todd. v. Montoya</u>, No. CIV 10-0106 JB/KBM, 2011 WL 523900 (D.N.M. Oct. 4, 2011) (Browning, J.), the Court granted in part and denied in part motions to stay discovery, allowing the plaintiff to take the deposition of one of two inmates that beat him up in prison, the conduct underlying his case.   <u>See</u> 2011 WL 523900, at *5.   The plaintiff brought a 42 U.S.C. § 1983 claim, based on the theory that one of the prison guards retaliated against the plaintiff for an argument the two of them had by allowing two inmates to view the plaintiff's offenses, and that the two inmates subsequently beat up the plaintiff based on the offenses that they saw.   <u>See</u>  2011 WL 523900, at *1. The defendant prison guard filed his summary judgment motion a year and two months after the

plaintiff filed the complaint.  See  2011 WL 523900, at *1.  The Court limited the stay to allow the

inmate's deposition, because the plaintiff's theory hinged upon the prison guard showing the inmates

the computer screen, or telling them of the plaintiff's offenses, and the defendant denied ever doing

either.  See  2011 WL 523900, at *4.  The Court allowed the deposition to go forward, because it

could be determinative of the case going forward, and did not burden any government employees

or entities:

> This testimony is possib[ly] determinative of [the Plaintiff]'s case, and this limited
> amount of discovery is narrowly crafted to get to the heart of the motion for
> summary judgment without allowing a lot of potentially unnecessary discovery.
> [The Defendant] has said he did not show [the inmate witness] or [the other inmate]
> his computer screen, or tell them [the plaintiff]'s crimes; if [the inmate witness] says
> otherwise, there will likely be a genuine issue of fact requiring the Court to deny the
> motions and allow the parties to proceed to trial.  It seems fundamentally unfair to
> dismiss [the plaintiff]'s case when a deposition of [the inmate witness] may make his
> case.  Further, this deposition will not burden any government employees or entities.
> Accordingly, the Court finds that this limited discovery falls within the exceptions
> to disallowing discovery once the defense of qualified immunity has been raised. See
> Garrett v. C.A. Stratmen, M.D., 254 F.3d at 953 (recognizing that a discovery order
> in the context of qualified immunity is not immediately appealable "when the
> defendant's immunity claim turns at least partially on a factual question; when the
> district court is unable to rule on the immunity defense without further clarification
> of the facts; and which are narrowly tailored to uncover only those facts needed to
> rule on the immunity claim are neither avoidable or overly broad.").

2011 WL 523900, at *5.

In B.T. v. Davis, 557 F. Supp. 2d 1262 (D.N.M. 2007)(Browning, J.), however, the Court

denied the plaintiff's request to be permitted more discovery after the defendant raised the qualified

immunity defense.  557 F. Supp. 2d at1287.  The Court refused to allow the plaintiff to depose

witnesses that the plaintiff alleged would evidence the defendants' knowledge of their alleged

violation of the plaintiff's constitutional rights, because the defendant's depositions would not have

affected the Court's conclusion that "the law regarding [the plaintiff]'s claims was not clearly

established and that a reasonable person in the Defendants' position could have believed their actions were lawful."  557 F. Supp. 2d at 1287.

## ANALYSIS

The Court will grant the Defendants' Motion to Stay, because Romero is entitled to be protected from the burdens of discovery until the Court rules on Romero's Summary Judgment Motion and decides whether she may be entitled to the defense of qualified immunity.  The Plaintiffs have not proven that Dr. Morgan's testimony is necessary to the Court's decision whether Romero is entitled to qualified immunity.  Accordingly, the Court will not permit the Plaintiffs to Depose Dr. Morgan at this time.

**I.     THE COURT WILL STAY DISCOVERY, BECAUSE ROMERO IS ENTITLED TO PROTECTION FROM ANY FURTHER BURDENS OF THIS LAWSUIT, INCLUDING DISCOVERY.**

"Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'"  Roybal v. City of Albuquerque, 2009 WL 1329834, at *10 (quoting Siegert v. Gilley, 500 U.S. at 232).  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. at 526.  "If a reasonable person could have believed that the actions were lawful, 'defendants are entitled to dismissal before discovery.'"  Smith v. Kenny, 678 F. Supp. 2d 1093, 1107 (D.N.M. 2009)(Browning, J.)(quoting Workman v. Jordan, 958 F.2d 332, 336 (10th Cir.1992)).

The Plaintiffs generally contend that, because a large amount of discovery has already taken place in this case, including Romero's deposition, the policy behind staying discovery while the Court rules on Romero's assertion of qualified immunity is not served in this case.  Romero's assertion that she is entitled to qualified immunity comes more than eighteen months after the

Plaintiffs filed this case and after a large amount of discovery has already taken place. That Romero did not immediately raise the question whether she is immune from this lawsuit does not mean that she has some lost the right to be protected from the burdens of litigation, including discovery, that still remain. While it is of course true that "[i]ssues of qualified immunity are best resolved at the earliest possible stage in litigation." Glover v. Gartman, No. CIV 11-0752, 2012 WL 4950756, at *14 (quoting Pearson v. Callahan, 555 U.S. at 232), it is not possible to decide the issue of qualified immunity until a party raises the issue. Once the defendant raises the issue, even if not at earliest possible stage of litigation, "[u]ntil th[e] threshold immunity question is resolved, discovery should not be allowed." Harlow v. Fitzgerald, 457 U.S. at 818-19. While qualified immunity is often times and probably best raised and decided before the initiation of discovery, the protection of qualified immunity is for the defendant's benefit so that the defendant is not further subjected to the litigation's burdens. That Romero has already been subjected to the burdens of litigation for eighteen months does not lessen the protection to which she is entitled under the law. The Court notes that eighteen months is not an unreasonable or even an unusual amount of time to wait to raise a qualified immunity defense. See Todd v. Montoya, 2011 WL 523900 (defendant asserted qualified immunity fourteen months after case was filed); Zamora v. City of Belen, 229 F.R.D. 225 (D.N.M. 2005)(Browning J.)(defendant asserted qualified immunity almost seventeen months after case was filed, and nine months after discovery was complete). Moreover, the policy behind qualified immunity is to protect government employees from suit where they were acting within the constitutional bounds of their official authority. See Harlow v. Fitzgerald, 457 U.S. at 807 (noting that qualified immunity reflects "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority"). As the Tenth Circuit has noted, "[i]f qualified immunity is to mean anything, it must mean that

public employees who are just doing their jobs are generally immune from suit." <u>Lewis v. Tripp</u>, 604 F.3d 1221, 1230 (10th Cir. 2010). Whether that protection is sought by the plaintiff earlier or later in the case does not lessen the fact that the law provides that protection when the plaintiff seeks it. That Romero has been subjected to a suit for which she may be found immune to liability and not yet asked the Court's protection from the substantial burdens of litigating that suit is not reason to continue to subject her to those burdens, and thus does not counsel in favor of denying her Motion to Stay.

Defense counsel often wisely assess a case early and realize that some discovery is appropriate. Defendants often need some amount of discovery to prepare their motion for summary judgment. Or defense counsel might professionally recognize that the plaintiff may need some discovery, else the Court will grant a rule 56(f) of the Federal Rules of Civil Procedure affidavit. In any case, seasoned, expert defense counsel should not be penalized for delaying a motion for summary judgment or qualified immunity, and lose all benefits of a stay when, in their professional judgment, a motion would be premature if earlier filed. While the Court has expressed concern about the defense of qualified immunity and the need for protection against all discovery,[2] as long

---

[2]In <u>Kerns v. Bd. of Comm'rs of Bernalillo Cnty.</u>, No. CIV 07-771 JB/ACT, 2012 WL 3656469 (D.N.M. Aug. 22, 2012)(Browning, J.), footnote 36, the Court noted: "While the Court must faithfully follow the Tenth Circuit's decisions and opinions, the Court is troubled by this statement and the recent trend of the Supreme Court's hesitancy in § 1983 actions to address constitutional violations." 2012 WL 3656469, at *33 n.36. As explained in footnote 36, the Court was troubled by the Tenth Circuit's footnote 5 in <u>Kerns v. Bader</u>, 663 F.3d 1173 (10th Cir. 2011): "Neither do we doubt that the scope of the Constitution's protection for a patient's hospital records can be adequately decided in future cases where the qualified immunity overlay isn't in play (<u>e.g.</u>, through motions to suppress wrongly seized records or claims for injunctive or declaratory relief)." 663 F.3d at 1187 n.5. The Court continues to be troubled by the current Supreme Court's and the Tenth Circuit's willingness to address constitutional violations through motions to suppress -- which rewards guilty criminal defendants -- rather than § 1983 claims -- which Congress designed to protect the civil rights of presumably innocent people. <u>See Kerns v. Bd. of Comm'rs of Bernalillo Cnty.</u>, 2012 WL 3656469, at *33, n.36. ("It is interesting that the current Supreme Court and Tenth

as the Supreme Court allows the immunity defense and the Tenth Circuit reads the defense to require

protection of all defendants against the burdens of discovery as well as trial, there is no sound reason

to create a rule that the protections of a discovery stay are waived at some point, or to dictate when

the defense has to be raised.  In the end, such a rule could penalize plaintiffs of their ability to do

discovery more than anyone.  Here, for example, Romero's delay in raising the qualified immunity

defense benefitted greatly the Plaintiffs, because it allowed them to get almost all of their discovery

done before the qualified immunity defense was raised and the discovery stay ordered.

II.     **THE COURT WILL NOT PERMIT THE PLAINTIFFS TO DEPOSE DR. MORGAN BEFORE THE COURT DECIDES ON ROMERO'S QUALIFIED IMMUNITY DEFENSE, BECAUSE THE PLAINTIFFS HAVE NOT PROVEN THAT HIS TESTIMONY IS NECESSARY TO THE COURT'S DECISION.**

Although the Plaintiffs assert that they require Dr. Morgan's testimony to oppose Romero's

Summary Judgment Motion, the Court will not allow them to depose Dr. Morgan, because the

circumstances of the case do not suggest that Dr. Morgan's testimony will provide any evidence that

they do not already have.  The general rule for staying discovery in qualified immunity cases is:

"Once the qualified immunity defense has been raised, the Court must not let a plaintiff use

discovery as a fishing expedition to flesh out the merits of his claim."  B.T. v. Davis, 557 F. Supp.

2d at 1286 (citing Sawyer v. Cnty. of Creek, 908 F.2d 663, 668 (10th Cir. 1990)).    There is,

however, an exception to the general rule.  The Tenth Circuit, in Garret v. Stratman, recognized that

a discovery order in the context of qualified immunity is not immediately appealable

> when the defendant's immunity claim turns at least partially on a factual question;
> when the district court is unable to rule on the immunity defense without further

---

Circuit appear more willing to suppress evidence and let criminal defendants go free, than have
police [and/or municipalities] pay damages for violations of innocent citizens' civil rights.").

> clarification of the facts; and which are narrowly tailored to uncover only those facts
> needed to rule on the immunity claim are neither avoidable or overly broad.

254 F.2d at 946. Thus, where the claim turns at least partially on a factual question for which the

district court needs more facts to answer, courts should allow discovery, but limit the discovery to

allow the plaintiff to uncover only the necessary facts to decide the immunity claim. In Todd v.

Montoya, the Court imposed a stay of discovery, but only after allowing a plaintiff to take the

deposition of a witness where the "testimony is possib[ly] determinative of [the] case, and th[e]

limited amount of discovery is narrowly crafted to get to the heart of the motion for summary

judgment without allowing a lot of potentially unnecessary discovery." 2011 WL 5238900, at *5.

In B.T. v. Davis, however, the Court refused to allow the plaintiff to depose witnesses that the

plaintiff alleged would evidence the defendants' knowledge of their alleged violation of the

plaintiff's constitutional rights after the qualified immunity defense had been raised, because the

defendant's depositions would not have affected the Court's conclusion that "the law regarding [the

plaintiff]'s claims was not clearly established and that a reasonable person in the Defendants'

position could have believed their actions were lawful." 557 F. Supp. 2d at 1287.

The Plaintiffs have conducted a considerable amount of discovery in this case to date. They

have submitted written questions, received written answers, and have already taken fourteen

depositions, including "numerous employees of Defendant ASI, [] Defendant Santa Fe Public

Schools, [and] including Melanie Romero." Motion to Stay at 3. In the course of this discovery,

even if the facts in the Plaintiffs' Complaint was insufficient to provide the Court with facts on

which it could decide whether Romero is immune from this lawsuit because of the defense of

qualified immunity, they have likely gathered those facts. To overcome Romero's defense of

qualified immunity, the Plaintiffs must demonstrate that: (i) Romero's actions violated their

constitutional rights; and (ii) the right Romero allegedly violated was clearly established at the time of the alleged unlawful activity.  See Riggins v. Goodman, 572 F.3d at 1107.  In determining whether a plaintiff meets this burden, courts must construe the facts in the light most favorable to the plaintiff as the non-moving party.  See Scott v. Harris, 550 U.S. 372, 378 (2007). The first prong is whether Romero's actions violated the Plaintiffs' constitutional rights.  Even if the Plaintiffs are contending that there is an issue of material fact regarding Romero's actions, based on the facts alleged in the Complaint, and the facts the Plaintiffs likely gathered during discovery, the Court cannot soundly conclude that Dr. Morgan's testimony will add facts necessary to this factor. Although Dr. Morgan may have helped write the code of conduct on which the Plaintiffs allege Romero relied in condoning the pat-downs and may have instructed Romero on the same conduct, these facts go to Romero's subjective beliefs about her conduct -- or her intent -- and not her objective conduct.  See Crawford-El v. Britton, 523 U.S. 574, 588 (1998)("[A] defense of qualified immunity may not be rebutted by evidence that the defendant's conduct was malicious or otherwise improperly motivated.  Evidence concerning the defendant's subjective intent is simply irrelevant to that defense."); Simkins v. Bruce, 406 F.3d 1239, 1242 (10th Cir. 2005)("The Supreme Court has held that qualified immunity is governed by an objective reasonableness standard, and thus, evidence concerning the defendant's subjective intent is irrelevant . . . .").  While the Plaintiffs also assert that Dr. Morgan may be able to testify about Romero's conduct because he was at the homecoming dance, the Defendants contend that he was in a different part of the building and did not see Romero's alleged unconstitutional acts.  The Court thus cannot conclude that, even if Romero's actions are contested, Dr. Morgan's testimony would add facts about her actions necessary to aide in the Court's resolution of factor 1.  The Plaintiffs have not proved, therefore, that

Case 1:11-cv-00422-JB-SCY   Document 132   Filed 12/20/12   Page 18 of 21

Dr. Morgan's testimony is necessary to the Court's resolution of the first prong of the qualified immunity test.

In regard to the second prong of the qualified immunity test -- evaluating whether the right was clearly established -- the courts consider whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right. See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d at 1327. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Currier v. Doran, 242 F.3d at 923. See Medina v. City & Cnty. of Denver, 960 F.2d at 1498. "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186(quoting Saucier v. Katz, 533 U.S. at 202)(emphasis added). The second prong of the qualified immunity test is thus a matter of law. Although Dr. Morgan, in helping to write the code of conduct on which Romero was relying, may provide evidence as to his opinion of the constitutionality or reasonableness of Romero's actions, or his opinion whether the law was clearly established at the time, the evidence would be interesting, but not be particularly relevant to and at least not determinative whether the law was sufficiently clear as a matter of law. Dr. Morgan's testimony is thus also largely or entirely irrelevant to the second prong. The Plaintiffs have therefore failed to prove that Dr. Morgan's testimony is "possib[ly] determinative of [Romero]'s case" or determinative whether Romero is entitled to qualified immunity. 2011 WL 5238900, at *5. The Court, therefore, will deny their request to take Dr. Morgan's deposition.

-18-

## III.     THE COURT WILL STAY THE CASE ENTIRELY AND NOT JUST AS TO ROMERO.

The Plaintiffs also ask that, if the Court stays discovery, it should do so only as to Romero and not to the other Defendants.  They point out that Romero's counsel also represents Defendants Santa Fe Public Schools Board of Education, Gudwin, Wikle, Trujillo, Montano, Carrillo, and Gutierrez, and that none of these defendants, other than Defendant Romero, are entitled to qualified immunity.  The Plaintiffs contend that Romero's attorney could attend the depositions on behalf of the other Defendants, and Romero would still be protected from the burdens of discovery as she would not have to do anything herself.

The Court is not unsympathetic to the Plaintiffs' arguments.  There is a lot of fiction involved in the policies and the rhetoric used to support qualified immunity.  In modern litigation, attorneys do most of the work for litigation, and public officials often do not know that discovery and depositions are taking place -- except as to them -- until settlement negotiations or trial is near.  Public officials rarely go to depositions or, in the Court's experience, hearings.  Nevertheless, the law is well established that discovery should be stayed until the Court decides the qualified immunity issue.  See e.g., Siegert v. Gilley, 500 U.S. 226, 231 (1996)("Once a defendant pleads a defense of qualified immunity, on summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.   Until this threshold immunity question is resolved, discovery should not be allowed.")(internal quotations and citations omitted);  Harlow v. Fitzgerald, 457 U.S. at 817-18 (noting that qualified immunity protects officials from "the costs of trial . . . [and] the burdens of broad-reaching discovery"); Workman v. Jordan, 958 F.2d at 336 ("Discovery should not be allowed until the court resolves the threshold question whether the law was clearly established at the time

the allegedly unlawful action occurred."). While Romero's counsel will go to the depositions for her, her counsel is her agent. The Court cannot, without overriding the policies underlying the stay, say the case is stayed to her, but not anyone else. In few cases does an attorney feel comfortable not going to deposition in the case in which the attorney's client is involved. Also, a partial stay could drag the Court into endless disputes about to whom the discovery stay applies. The policy underlying a discovery stay does not only protect the public official from being personally subjected to the burdens of litigation, but it protects the public official from the attendant burdens. In Harlow v. Fitzgerald, the Supreme Court noted that the protection afforded by the discovery stay protects not only the public official being sued from being personally subjected to the burdens of the lawsuit, but also protects against broad-ranging discovery about the defendant that can result from judicial inquiry into a public official's subjective motivation for making the decision for which the official is being sued. See 457 U.S. at 817 ("Judicial inquiry into subjective motivation [when a public official is sued] [] may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues. Inquiries of this kind can be peculiarly disruptive of effective government."). The policies that underlie a discovery stay therefore do not support a partial stay only as to discovery directed against Romero.

**IT IS ORDERED** that the Defendants' Motion to Stay Discovery on the Basis of Qualified Immunity, filed Nov. 14, 2012 (Doc. 115) is granted. The Court will stay all discovery in this case until the Court renders its decision on the Individual School Defendant Melanie Romero's Motion for Summary Judgment on Count I of Second Amended Complaint Based Upon Qualified Immunity, filed Nov. 13, 2012 (Doc. 113).

_____
UNITED STATES DISTRICT JUDGE

-20-

*Counsel:*

Aimee Bevan
O'Friel & Levy, P.C.
Santa Fe, New Mexico

-- and --

Megan Cacace
Relman, Dane & Colfax PLLC
Washington, D.C.

-- and--

Reed N. Colfax
Relman, Dane & Colfax PLLC
Santa Fe, New Mexico

     *Attorneys for the Plaintiffs*

Andrew M. Sanchez, Sr.
Matthew Lee Campbell
Cuddy & McCarthy, LLP
Albuquerque, New Mexico

-- and --

Gerald A. Coppler
Coppler Law Firm, P.C.
Santa Fe, New Mexico

     *Attorneys for the Defendants Santa Fe Public Schools*
       *Board of Education, Barbara Gudwin, Glenn Wikle,*
       *Linda Trujillo, Frank Montano, Steven J. Carrillo,*
       *Bobbie J. Gutierrez, Melanie Romero*

Terry R. Guebert
Alisa Wigley-Delara
Christopher J. DeLara
Guebert Bruckner P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant ASI New Mexico, LLC*