# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CANDICE HERRERA, ARIANNA
LONDON, ASHLEY HURTADO, and
T.H., a minor by and through her father and
guardian VINCENT HERRERA, and all others
similarly situated,

       Plaintiffs,

vs.                                                                  No. CIV 11-0422 JB/KBM

SANTA FE PUBLIC SCHOOLS, SANTA FE
PUBLIC SCHOOLS BOARD OF EDUCATION,
BARBARA GUDWIN, GLENN WIKLE,
LINDA TRUJILLO, FRANK MONTANO,
STEVEN J. CARRILLO, in their official
capacities as members of the Santa Fe Public
Schools Board of Education, BOBBIE J. GUTIERREZ,
in her official capacity as Superintendent of Santa Fe Public
Schools, MELANIE ROMERO, individually and in her
official capacity as Principal of Capital High
School, ROBERT STEPHENS, in his official capacity
as Principal of Santa Fe High School as a necessary party
for complete relief, ASI NEW MEXICO, LLC,
JOHN/JANE DOE Nos. 1-8,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the School Defendants' Rule 37 Motion to

Compel Production of Original Document and Memorandum in Support, filed November 2, 2012

(Doc. 112)("Motion to Compel").  The Court held a hearing on December 20, 2012.  The

primary issues are: (i) whether the Court should compel the Plaintiffs to produce, to the extent

possible, Plaintiff Arianna London's complete bound journal from which the Plaintiffs have

produced only certain pages; (ii) whether the Court should compel the Plaintiffs to produce

additional pages or entries from London's journal, because they are relevant to her claim for

emotional distress damages; and (iii) whether the Court should award the Defendants costs and fees incurred in bringing the Motion to Compel, because the Plaintiffs' objections to producing the requested the materials were not substantially justified.  The Court will grant the Motion to Compel.  The Defendants have made a sufficient showing that, because the circumstances around the journal entries and the way in which the Plaintiffs produced the journal entries in response to the Defendants' discovery requests, the Plaintiffs' production of London's original bound journal in its entirety may lead to evidence that the produced pages are not authentic, thus impeaching London's and the Plaintiffs' credibility.  Because investigation of the Defendants' concern requires that the Defendants be permitted to view, to the extent possible, the entire, original journal, the Court will grant the Defendants' request to produce, to the extent possible, London's complete bound journal.  Second, because London, and not her attorneys, made the decision as to which pages in her journal were responsive to the Defendants' discovery requests and discoverable, the Court concludes that the Defendants have made an adequate showing that, especially given London's claim for emotional distress damages, there may be additional relevant and discoverable entries and pages.  Because the Court concludes that it should compel the production of the entire journal on other grounds, the Court need not require the Plaintiffs to further disclose particular pages or entries, and will also not review in camera the journal to make its own determination about additional discoverable material.  Finally, because London made the decision as to which pages were responsive to the Defendants' discovery requests without her attorneys at least viewing the entire journal's contents before representing that any additional, unproduced pages were not relevant to any claims or defenses in the case, the Court find that the Plaintiffs' objection are not substantially justified.  The Court will therefore require,

under rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, the Plaintiffs to pay the Defendants' reasonable expenses incurred in making the motion, including attorney's fees.

## FACTUAL BACKGROUND

The Court has previously set forth the facts of the case in detail in its Memorandum Opinion and Order granting the Individual School Defendant Melanie Romero's Motion for Summary Judgment on Count I of the Second Amended Complaint Based Upon Qualified Immunity, filed Nov. 13, 2012 (Doc. 113), and incorporates by reference those facts here. See Herrera v. Santa Fe Pub. Sch., No. CIV 11-0442 JB/KBM, 2013 WL 3462484, 2013 U.S. Dist. LEXIS 96171, at **3-40 (D.N.M. June 28, 2013)(Browning, J.). The Court will nevertheless set forth the facts relevant to this Motion to Compel.

"This case arises from searches that occurred at the April 16, 2011, Capital High prom" in Santa Fe, New Mexico. Herrera v. Santa Fe Pub. Sch., 2013 WL 3462484, 2013 U.S. Dist. LEXIS 96171, at *3. The Defendants served upon the Plaintiffs their first discovery requests, which included, among other requests, a request for production of written statements concerning the events of the April 16, 2011, prom, or the day after the prom. See Motion to Compel ¶ 1, at 1; Defendants' First Set of Discovery at 1, Request for Production No. 6, filed November 2, 2012 (Doc. 112-1). In response, the Plaintiffs, along with objections to the request, produced a journal entry from London's diary, purportedly written the day after the prom, which consisted of four pages. See Motion to Compel ¶ 2, at 1-2; London's First Production at 1-3, filed November 2, 2012 (Doc. 112-2).

The Defendants' review of the journal entry arose concern that "the undated journal entry, which purports by its terms to have been written on the day after the prom, April 17, 2011,

- 3 -

may have been written much later for the primary purpose of supporting the Plaintiffs' claims." Motion to Compel ¶ 7, at 3.  The Defendants therefore requested, first on May 15, 2012, with a follow-up request on May 30, 2012, that the Plaintiffs produce the entire, original journal so that the Defendants could inspect it.  See Motion to Compel ¶¶ 8-9, at 3; Journal Discovery Dispute Electronic Mail Transmissions at 2, filed November 2, 2012 (Doc. 112-4).  On June 4, 2012, the Plaintiffs responded that they would not produce the journal, because the remaining pages in the journal "are, of course, deeply personal and private and unrelated to the matters at issue in the case."  Journal Discovery Dispute Electronic Mail Transmissions at 3.  See Motion to Compel ¶ 10, at 4.

The Defendants thereafter served London with a second set of discovery requests, and in Request for Production No. 8, requested that London "produce for inspection, copying and, if necessary, testing the . . . journal."  Plaintiffs' Response to Defendants' Second Discovery Request for Production No. 8, filed November 2, 2012 (Doc. 112-5).  In response to these second discovery requests, on July 30, 2012, the Plaintiffs produced an additional eight pages from London's journal, and again objected that the journal's unproduced pages were too personal and not related to claims or defenses in the case.  See Motion to Compel ¶ 12, at 4; London's Second Production at 1-8, filed November 2, 2012 (Doc. 112-6).  Because the Defendants disagreed with the Plaintiffs' position that the journal was not discoverable in its entirety, after discussing the matter and discovering that the Plaintiffs would continue to object to the production, the Defendants prepared this Motion to Compel, but resolved not to file it until after deposing London on August 24, 2012.  See Motion to Compel at ¶¶ 13-16, at 5.

During London's deposition, she testified that she copied the initial four pages from the

journal and provided those copies, but not the entire journal, to her attorney.  See Deposition of

Arianna London at 244:22-247:20 (taken Aug. 24, 2012), filed November 2, 2012 (Doc. 112-

8)("London Depo.")); Motion to Compel ¶ 16(a), at 5.  London testified that she did not at any

time provide her entire journal to her attorney, but rather "ripped them out and gave them to

him."  London Depo. at 247:8-12.  The Plaintiffs' request for relief asks the jury to "[a]ward

compensatory damages in an amount to be determined by the jury that would fully compensate

Plaintiffs for the injuries, humiliation, embarrassment, and mental and emotional distress caused

by the Defendants alleged herein."  Second Amended Complaint ¶ 163(d), at 28, filed November

18, 2012 (Doc. 100).

## PROCEDURAL BACKGROUND

Defendants Santa Fe Public Schools Board of Education (Barbara Gudwin, Glenn Wikle,

Linda Trujillo, Frank Montaño and Stephen J. Carrillo), Bobbie J. Gutierrez, Melanie Romero,

and Leslie Kilmer (collectively the "Defendants") move the Court, pursuant to rule 37 of the

Federal Rules of Civil Procedure, for an order compelling London to produce, to the extent

possible, the complete bound journal from which she has produced only a number of pages.

Motion to Compel at 1.  The Defendants assert that, in response to their discovery requests, in

which they asked the Plaintiffs to produce all written statements related to the events of the 2011

Capital High School prom, "[s]ubject to numerous boilerplate objections, Plaintiff London

produced a single document that more or less appeared to be a journal entry of Plaintiff Arianna

London."  Motion to Compel ¶¶ 1-2, at 1-2.  The journal entry consists of four pages, which

appear to be written the day after the prom.  See Motion to Compel ¶ 1, at 2.

The Defendants assert that, throughout correspondence between the parties, the Plaintiffs

responded that their answers to interrogatories "had not been truncated, but did not manage to avoid saying the same regarding produced documents."  Motion to Compel ¶ 5, at 2-3.  The Defendants contend that "[t]he purported journal entry produced . . . is extremely self-serving . . . focusing primarily on the searches that are the subject of this law suit, and stated in terms similar to those used in the original Complaint."  Motion to Compel ¶ 6, at 3.  The Defendants are therefore "worried" that this journal entry "may have been written much later for the primary purpose of supporting the Plaintiffs' claims."  Motion to Compel ¶ 7, at 3.  The Defendants state that, based on these worries, they corresponded with the Plaintiffs' counsel, seeking to obtain the journal to "see if it seemed to be in a correct position temporally among other entries."  Motion to Compel ¶ 8, at 3.  The Plaintiffs' counsel responded, refusing to produce the journal, because "the remaining pages were 'deeply personal and private and unrelated to the matters at issue in this case.'"  Motion to Compel ¶ 10, at 4.

The correspondence having been unsuccessful, the Defendants served London with a second request for discovery, asking that she make available the rest of the journal for the Defendants' inspection.  See Motion to Compel ¶ 11, at 4.  In her response to the requests, London again refused to produce the journal, asserting that the matters therein are "deeply personal."  Motion to Compel ¶ 12, at 4.  The Defendants' counsel sent correspondence to the Plaintiffs' counsel, again asserting that the Defendants need to see the journal to determine whether the pages are in the correct temporal order inside the journal.  See Motion to Compel ¶ 13, at 5.  The Defendants assert that the Plaintiffs' counsel responded with a "curt email reply" providing no additional grounds for not producing the journal, and, to date, she has not requested they enter a protective order.  Motion to Compel ¶ 14, at 5.  The parties put on hold any possible

motion to compel until after London's deposition on August 12, 2012.  See Motion to Compel ¶¶ 15-16, at 5.  The Defendants assert that, because "the only substantial damages alleged by Plaintiffs in this matter, including Arianna London, are emotional and psychological injuries," and because these journal pages are probative of London's damages, the journal entries are "clearly relevant."  Motion to Compel ¶ 19, at 6.  The Defendants contend that, given that they have questions whether the journal entries are what they purport to be, the Court should order London to make available her journal for the Defendants' inspection.  See Motion to Compel ¶¶ 20-22, at 6.

The Defendants argue that, because "the scope of discovery under rule 26 is broad," they are entitled to inspect the journal.  Motion to Compel at 8 (quoting Cabot v. Wal-Mart Stores, Inc., No. CIV 11-0260 JB/RHS2012 U.S. Dist. LEXIS 22567, at *24 (D.N.M. Feb. 16, 2012)(Browning, J.)).  In regards to the copied journal pages, the Defendants state: "When School Defendants received the Document with Plaintiff London's discovery responses, they were immediately struck with the following numbered odd qualities of the document."  Motion to Compel at 9.  The first "odd quality" that the Defendants point out is that "[t]he text of the Document seems to have been written to conform to the claims of Candice and Tiffany Herrera in the original Complaint . . . even though Ms. London was not a party to the action at that time."  Motion to Compel at 9.  The Defendants note:

> The second unusual quality of the Document, at least for a journal entry, is that, other than seeing the binding stitching in the copies, there are no other indicia that the Document is just a contemporaneous entry in a continuous journal regarding Ms. London's life. The entry shown in the Document starts on the page on the right side of the Journal as it lays open and the previous page, on the left side of the Journal as it lays open, is blank (except for writing showing through from the back side of the page).

Motion to Compel at 10.  Third, the Defendants assert that it appears odd that the journal entry is signed, and that it also appears as if it was signed with a different pen or pencil.  <u>See</u> Motion to Compel at 10.  Fourth, the Defendants point out that the journal entry is undated.  <u>See</u> Motion to Compel at 10.  Additionally, the Defendants assert that they should have access to the journal, as "the complete, original Journal . . . is certainly relevant to Plaintiff's claim for damages." Motion to Compel at 10.

With regard to the Defendants' second discovery requests that they served on London, the Defendants acknowledge that London produced eight more copied pages.  <u>See</u> Motion to Compel at 11.  The Defendants assert that the production of these eight additional pages, after London and the Plaintiffs' counsel had represented that the remainder of the journal is too personal, shows that the journal's contents are not as personal as London originally contended. <u>See</u> Motion to Compel at 11-12.  The Defendants quote the Plaintiffs' response to their request to produce the journal:

> Plaintiff objects on the grounds described in the general objections. Plaintiff further objects that this Request seeks information that is not relevant and not likely to lead to the discovery of admissible evidence. Plaintiff objects that this Request seeks private information that is not relevant to this action. Plaintiff objects that this Request operates to annoy, oppress, and/or embarrass. Subject to and without waiving these objections, Plaintiff states:
>
> Plaintiff has produced/is producing all pages of the journal that have to do with the allegations, claims, or defenses in this action. Therefore, all pages responsive to this Request that are discoverable have been/are being produced to Defendants. Pages solely reflecting matters outside this lawsuit will not be produced, as they are private, irrelevant, not likely to lead to the discovery of admissible evidence, and therefore not subject to discovery.

Motion to Compel at 12 (quoting Plaintiffs' Response to Defendants' Second Discovery Request For Production No. 8).  The Defendants also point out that they discovered at London's

deposition that, at the time the Plaintiffs' counsel represented to the Defendants in discovery and in the associated correspondences that the journal's contents were too private and sensitive for disclosure, the Plaintiffs' counsel had not been provided the journal, but rather London had provided only particular pages to the Plaintiffs' counsel. See Motion to Compel at 12.

The Defendants argue that the "Plaintiff's behavior surrounding her production of chosen pages from the Journal while hiding the original Journal from sight and then actually tearing pages out of the Journal after the School Defendants had asked to see it already provides grounds for doubting her credibility." Motion to Compel at 12. The Defendants assert that evidence in the journal probative of how London kept her journal "now may or may not be lost and recoverable," and that evidence about London's mental and emotional state, relevant to her emotional damages, "may or may not be lost and unrecoverable." Motion to Compel at 13. They contend, therefore, that, "[c]ertainly, School Defendants should be provided ample opportunity to examine and copy the originals of the produced pages along with what is left of the original Journal and the School Defendants are entitled to an order compelling as much." Motion to Compel at 13.

On November 19, 2012, the Plaintiffs filed the Plaintiffs' Opposition to School Defendants' Motion to Compel. See Doc. 123 ("Response"). The Plaintiffs argue that the Court should not compel London to produce her journal or any additional pages, because they are "unrelated to the allegations raised in this case." Response at 1. The Plaintiffs state:

> The Schools [sic] Defendants articulate as their primary reason for wanting the remaining pages that the rest of the pages will somehow reveal that the pages related to the Prom are a sham. There is no basis for that assertion and the Motion is simply an attempt to embarrass and humiliate Plaintiff London, and, by association, the other Plaintiffs.

Response at 1.  They assert that the "defendants are simply employing a tactic of intimidation to attempt to dissuade Plaintiffs from continuing to pursue their well-founded claims."  Response at 2.  According to the Plaintiffs, "[a]s is made in the Schools [sic] Defendants' Motion, the remaining portions of the diary have no, or minimal, relevance to any issue in the case, which forces the School Defendants to concoct a far-fetched, baseless theory that the diary was manufactured after-the-fact to support Plaintiffs' legal claims."  Response at 2.

Setting forth the facts, the Plaintiffs assert that London received the journal in July 2010, and, since then, "Arianna has occasionally written in the journal, including writing some accounts of what occurred at the 2011 Capital High School prom and subsequent, related events."  Response at 3 (quoting Deposition of Arianna London at 246:21-22, 248:12-250:3 (taken Aug. 24, 2012), filed November 19, 2012 (Doc. 123-1)).  The Plaintiffs contend that London, in good faith, responded to the Defendants' first discovery request by photocopying and providing "four pages of her diary that constituted a single entry regarding her experience at prom."  Response at 3.  The Plaintiffs assert that, in response to the Defendants' broader second request, London provided eight more pages "that discussed any matter related to the lead up to prom and Arianna's actions and reactions related to a variety of events after the prom."  Response at 3.  They assert that any other pages that they did not produce are unrelated to the case, and the Defendants' continued "request for additional pages operated to annoy, oppress, and/or embarrass Plaintiff by seeking private, irrelevant information."  Response at 3.

The Plaintiffs assert that, "while it is true that relevance in discovery is broader than that required for admissibility at trial, the object of an inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."  Response at

4 (quoting Rivera v. DJO, LLC, No. CIV 11–1119 JB/RHS, 2012 WL 3860744, at *9 (D.N.M.

Aug. 27, 2012)(Browning, J.)).   The Plaintiffs argue that, as the Court has noted, discovery

should not be a fishing expedition, and thus the Court should not compel production of the

journal, because "as a District of Columbia District Court Judge has aptly described, 'most of the

material demanded will be irrelevant to the case, but of intimate importance to the plaintiff,'

which justifies 'denying defendant's motion to compel production of the diaries because of the

personal nature of the documents sought.'"   Response at 4-5 (quoting Ayala v. Tapia, Civ. A. 90-

1345 (RCL), 1991 WL 241873, at **1-2 (D.D.C. Nov. 1, 1991)(citing Rivera v. DJO, LLC, 2012

WL 3860744, at *9).

The Plaintiffs argue that the Court should make a distinction between form and

substance, and should find that the form of the produced diary pages does not counsel the Court

to compel London to produce pages that are substantively irrelevant.   See Response at 5.   In

response to the Defendants' assertions "describing what they call four 'odd qualities' of the

diary," the Plaintiffs assert that "[n]one of these qualities is odd or in any way creates a basis to

suspect that the diary is something other than what it appears to be."   Response at 5.   As to the

Defendants' first contended oddity, the Plaintiffs assert:

> [T]hat Arianna discusses the searches and her attempts to discuss them with
> school personnel and that the diary entry does not describe the prom itself . . . .
> does not suggest some inauthenticity.  Unfortunately for Arianna, her prom night
> was most memorable for the fact that . . . "the guard literally put her hands up my
> skirt and down my shirt. She then though[t] it was a good idea to grope my
> boobs."

Response at 5.  The Plaintiffs also assert that, if London wrote the journal entry for the purpose

of later using it as evidence, she would not have used the language that she did.  See Response at

6.  With regard to the Defendants' comment that there are no indicia that the pages are taken

from a continuous journal, the Plaintiffs respond that they "do not articulate any reason why starting a journal entry on the right hand side of the book suggests some nefarious conduct." Response at 6.

In response to the Defendants' contention that it is odd that London apparently signed the journal entry, the Plaintiffs point out that "the very common 'Dear Diary' form of journal entries takes the form of a letter that is signed and the entries of perhaps the most famous diary of all time -- the Diary of Anne Frank -- has signed entries."  Response at 6.  They assert: "Similarly, the fact that Arianna's signature looks (to Defendants) different from the handwriting is of no consequence," pointing out that the Defendants do not appear to seek the journal for purposes of allowing a handwriting expert to examine the entries.  Response at 7.  Finally, in response to the Defendants' contention that the entries are odd, because they are not dated, the Plaintiffs state that "Arianna does not date her entries."  Response at 7

The Plaintiffs next argue that the Defendants' contention that the diary may be relevant to London's emotional distress claim is insufficient to compel production.  The Plaintiffs assert: "As a general matter, courts have not permitted production of a diary where its purported relevance is merely that the entries may relate in some undefined way to a plaintiff's emotional state and therefore be relevant to damages."  Response at 7-8 (citing, as an e.g. cite, Sampson v. Univ. of Colo., 220 F.R.D. 354 (D. Colo. 2004)).  The Plaintiffs assert that this proposition "stems from the general recognition that 'diaries and personal letter that record only their author's personal thoughts lie at the heart of our sense of privacy.'"  Response at 8 (quoting Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 530 (1977)).  They assert that the courts therefore "weigh the potential relevancy of the diary against the author's privacy interests."  Response at

- 12 -

8.   The Plaintiffs contend that, "[i]n weighing the harms of producing a diary against the potential value of the evidence, Courts have recognized the distinction between diary entries that relate directly to the issues raised in the case and diary entries that only may relate to some aspect of a party's emotional state."  Response at 8 (citing <u>Cooke v. N. M. Junior Coll. Bd.</u>, 579 F.2d 568, 570 (10th Cir. 1978); <u>Carolan v. N.Y. Telephone Co.</u>, 1984 WL 368, at *5 (S.D.N.Y. May 17, 1984)).  The Plaintiffs assert that they have already disclosed "the portions of the diary that pertain to the claims and all that is left is the irrelevant portions.  The mere making of a garden-variety emotional distress claim does not give Defendants complete license to discover any information related to any aspect of Plaintiff's life."  Response at 9 (citing, as an <u>e.g.</u> cite, <u>Combe v. Cinemark USA, Inc.</u>, 2009 WL 2578853 (D. Utah Aug. 19, 2009)).

The Plaintiffs also argue that the Defendants' suggestion that they improperly withheld journal pages in regards to the first discovery requests is unfounded, because the "Defendants neglect to note . . . the significant difference between their first and second requests for documents."  Response at 9.  The Plaintiffs point out that the first requests asked for documents related to the day of the prom and the following day only, and that in the second requests "the temporal limitation was removed."  Response at 9.  The Plaintiffs contend that each time their production of the journal pages was responsive and consistent with case law.  <u>See</u> Response at 9-10.

Finally, the Plaintiffs contend that the Defendants have not articulated a proper basis on which the Court can award them attorneys' fees.  They argue that, given the case law related to disclosure of diaries, their position on refusing to disclose the journal is "substantially justified."  Response at 10 (citing Fed. R. Civ. P. 37(a)(5)(A)(ii)).  The Plaintiffs also assert that "an award

of expenses would be unjust in the circumstances here, which involve a nineteen-year-old plaintiff who is a recent high school graduate seeking to keep the irrelevant portions of her personal diary private."  Response at 10.  For these reasons, they ask the Court to deny the Defendants' Motion to Compel.  See Response at 11.

On December 5, 2012, the Defendants filed the School Defendants' Reply to Plaintiffs' Opposition to School Defendants [sic] Motion to Compel [123].  See Doc. 127 ("Reply").  The Defendants begin by asserting: "Plaintiffs misstate Defendants' position from the beginning of the Response to the end."  Reply at 1 (emphasis in original).  The Defendants state that they are not seeking additional pages from the journal, but that they "have been clear that they seek the complete journal to examine the produced pages in situ."[1]  Reply at 1.  The Defendants also assert that, whereas the Plaintiffs state in their Response that the Defendants focus on the sequence of the pages to suggest that the Plaintiffs inappropriately withheld pages, which the Defendants intend to emphasize is that, after they asked to "examine the produced pages in situ," London "began destroying the journal by ripping out pages."  Reply at 2.

The Defendants first argue that, "[i]f, as Plaintiffs suggest, the Defendants merely want to dig for dirty little secrets or harass and embarrass London, the answer would be simple.  As established in the case law cited by Plaintiffs, London should produce all relevant documents . . . to the Court for in camera review."  Reply at 2 (citing Cooke v. N. M. Junior Coll. Bd., 579 F.2d at 570; Simpson v. Univ. of Colo., 220 F.R.D. at 354; Combe v. Cinemark USA, Inc., 2009 U.S. Dist. LEXIS 94732 (D. Utah Aug. 19, 2009)).  The Defendants point out that it is usually the

---

[1] In situ "is a Latin phrase that translates literally to 'In position.'"  In situ, Wikipedia.org, http://en.wikipedia.org/wiki/In_situ (last visited Aug. 15, 2013).

party withholding the alleged responsive materials that asks for in camera review, but contends

that the Plaintiffs are not doing so here, because, "[t]here are many possible reasons for this

omission, but one must certainly be, as London testified, she has already, at least partially,

destroyed the journal by ripping out pages."  Reply at 3.

The Defendants assert: "[W]hile Defendants would not oppose an *in camera* inspection

by the Court, they do not feel that such an inspection would negate Defendants' right to defend

themselves from Ms. London's accusations by inspecting the original journal."  Reply at 3.  They

contend:

> None of the authorities offered by the Plaintiffs contain facts similar to those
> before the Court in the present matter.  This is not the usual case where the Court,
> through *in camera* review, would be examining the remaining entries of the
> journal only to see if there is additional relevant subject matter. Therefore,
> Defendants cannot drop their request to examine the original journal as well as the
> original pages that have been ripped out, even in the event of an *in camera*
> review. Though there may be evidence relevant to London's claim for substantial
> money damages based solely upon the alleged loss of foundation and perfume and
> her alleged "significant" emotional injuries, the primary reason Defendants have
> sought and continue to seek this document is to examine the pages that London
> has produced in their original locations in the journal.

Reply at 3-4.  The Defendants assert that the Plaintiffs offer no response to this contention in

their Response.  See Reply at 4.

The Defendants argue that their concerns "with London's journaling practices" are

"valid."  Reply at 4.  The Defendants note that they were concerned as soon as the Plaintiffs

produced the first four journal pages, because they do not appear to read as one would expect a

high school student to write about a prom, "an event at which [London] admits having fun."

Reply at 4.  The Defendants argue that the Plaintiffs' three responses to this concern -- that the

most memorable fact was the invasive search, that the entry is consistent with the allegations

because it relates to the conduct underlying the lawsuit, and that London would not have used the same language if she knew the journal would become evidence in the suit -- are not "convincing."  Reply at 4-5.  The Defendants point out that London admitted in her deposition that "these facts were exaggerated and not true."  Reply at 5 (citing London Depo. at 258:23-259:16, 264:1-16).  The Defendants argue that "[a]rgument number 2 would be more convincing if the entry and the Complaint were consistent in their statements of fact instead of merely in tone and terminology."  Reply at 5.  Third, the Defendants contend: "As to writing 'pisses me off' and 'boobs' in the journal entry, nothing would indicate that Plaintiffs' counsel should expect any different language."  Reply at 5.  The Defendants refer the Court to London's deposition testimony, in which London testified that she told her mother that the security guards touched her "boobs."  Reply at 5 (internal quotation marks omitted)(quoting London Depo. at 68:21-69:1).

The Defendants add that, whereas the journal entry produced in response to their first discovery requests "would have been written sometime after 1:00 p.m. on April 16, 2011," "when testifying regarding what she did on the 16th, Ms. London never mentioned that she took a break to perform the unusual task of writing in her journal."  Reply at 6 (citing London Depo. at 108:4-8).  The Defendants point out that, during her deposition testimony, London answered "no" to their question whether she dates her journal entries, and they point out that she answered "sometimes" to their question whether she fills them out in chronological order.  Reply at 6-7 (internal quotation marks and citations omitted).  They assert that, "[w]hile Plaintiffs will probably argue that this is just another of London's journaling idiosyncrasies, Defendants do not understand how one can fill a journal in other than in chronological order."  Reply at 6-7.

The Defendants also argue that the Plaintiffs' cases are not on point.  The Defendants contend that the cases that the Plaintiffs cite in their Response discuss parties requesting production of additional pages for purposes of the pages' substantive relevance, whereas the Defendants seek to view the journal only so that they can determine the produced entries' authenticity.  See Reply at 7.  They assert:

> The controlling authority here is the rule, itself. Fed. R. Civ. P. Rule 34(a) which provides, in pertinent part that, "[a] party may serve on any other party a request within the scope of Rule 26(b) to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated documents . . . ."

Reply at 7 (alterations in original).

Finally, in relation to their requests for attorneys' fees and costs, the Defendants assert that "it is unlikely that the Plaintiff would withhold or destroy the journal if her attorney had told her to produce or preserve it.  Therefore, if fees and costs are awarded pursuant to Rule 47(a)(5)(A), Defendants suggest that it would be fairer to order the award against Ms. London's attorney."  Reply at 8.  The Defendants therefore ask that, while they do oppose the Court's in camera review of the journal, the Court nevertheless grant the Motion to Compel and allow the Defendants to review the journal in its entirety.  See Reply at 8.

At the December 20, 2012, hearing on the Motion to Compel, the Court noted that its discovery decisions reflect that the Court is "fairly liberal in discovery," and that its first impressions based on the parties' briefing are that "this journal needed to be produced pursuant to a confidentiality order and attorneys' eyes only, [so] that the defense attorneys [will] be able to . . . look at it."  Transcript at 90:6-11 (taken Dec. 20, 2012)(Court)("Tr.").[2]  The Defendants

---

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original,

stated that, since the beginning of discovery, they have asked to the see the journal in its entirety, because "[t]he way the pages are ordered, her testimony during the deposition indicates to us that the journal may not be in order.  It may be something that raises questions about whether this was written just for this litigation."  Tr. at 91:9-16 (Coppler).  The Defendants noted that they do not oppose a confidentiality order, noting: "Our point here is not to take this stuff to try to embarrass Ms. London.  We want to see what's in it, we want to see what it looked like in its original form."  Tr. at 91:24-92:2 (Coppler).

The Court asked the Defendants whether they agreed with the Plaintiffs that the United States Court of Appeals for the Tenth Circuit's decision in Cooke v. New Mexico Junior College Board permits them access to only the relevant portions of London's journal, because beyond these pages, it becomes a matter of personal privacy.  See Tr. at 92:9-23 (Court, Coppler).  The Defendants responded that they do not know, without reviewing the journal, whether the information is relevant, but that it may likely contain information relevant to London's emotional damages claim.  See Tr. at 92:24-93:9 (Coppler).  The Defendants noted that they ultimately want to review the entire journal to try to piece together when London wrote the entries, but added that, "if the Court is concerned about, you know, that it might drift off into irrelevant areas or there's stuff in the diary that we shouldn't see, that might be better handled by an[] in camera review by the Court first."  Tr. at 94:1-11 (Coppler).

The Plaintiffs responded by "start[ing] off where Mr. Coppler left off, which is the issue of you have to take the plaintiff's word that she has produced everything that is relevant.  That, of course, occurs all the time in every civil case."  Tr. at 94:19-22 (Colfax).  The Plaintiffs

unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

pointed out that one party sends out discovery requests and the other party answers, hopefully in good faith, and asserted that good-faith response is what the Plaintiffs did in this case. <u>See</u> Tr. at 94:22-95:4 (Colfax). The Court asked whether this case is distinguishable, because it appears that London, rather than Plaintiffs' counsel, made some of the decisions which journal entries were relevant and responsive. <u>See</u> Tr. at 95:5-19 (Court). The Plaintiffs responded that, given the private nature of journals, which case law recognizes, when the diary is fully exposed, even to a person's attorneys, it "changes the character of that privacy of that diary regard[less] of who reads it," and so a diary or journal is distinguished from other documents that parties may encounter in discovery. Tr. at 95:20-96:5 (Colfax). The Plaintiffs asserted that they do not believe that "th[e] fact that Ms. London had given us this set of documents from the diary really changes the nature of the fact that there are always decisions [and] cuts that are being made by parties." Tr. at 96:13-21 (Colfax).

The Court asked the Plaintiffs what they knew about the circumstances surrounding the diary, and whether the Court's reading of London's deposition -- that she had only written ten pages before the prom entry -- is correct. <u>See</u> Tr. at 96:22-97:1 (Colfax). The Plaintiffs responded that their understanding is that there were more along the lines of forty to fifty pages written before the prom, and that the journal contains about sixty to seventy pages total. <u>See</u> Tr. at 97:2-8 (Colfax).

In relation to the pages disclosed in response to the second discovery requests, the Court asked the Plaintiffs whether they agree that it is odd that London, who admittedly does not journal on a regular basis, spent so much time journaling the afternoon of the prom, after setting up for the prom and before getting ready to go the prom. <u>See</u> Tr. at 97:9-20 (Court). The

Plaintiffs responded that they do not believe there is such a thing as an odd journaling practice, especially for one that does not journal on a regular basis.  See Tr. at 97:21-25 (Colfax).  In response to the Court's question whether that journal practice nevertheless provides the Defendants fertile grounds to explore on cross examination, the Plaintiffs responded that the Defendants can cross examine and do not need to invade London's privacy any further than they have to pursue that issue on cross examination.  See Tr. at 98:2-99:5 (Colfax).

The Plaintiffs also asserted that the Simpson v. University of Colorado case supports the proposition that a "garden variety emotional distress does not open the door to everything that has ever happened in a person's life," and thus only relevant portions of a diary or journal are discoverable.  Tr. at 100:7-14 (Colfax).  The Court asked the Plaintiffs whether, given the amount of information that courts have found relevant in relation to emotional damages claims in excessive force cases, the Simpson v. University of Colorado case was correctly decided.  See Tr. at 100:15-101:1 (Court).  The Plaintiffs responded that there has to be some link between the material in the diary and the substance of the claim; in excessive force cases, for example, there is a close link between the amount of emotional distress that being arrested or assaulted by police officers in the alleged incident has in relation to the plaintiffs' past arrests.  See Tr. at 101:2-12 (Colfax).  Here, the Plaintiffs added, they have disclosed all the journal entries that are related to London's feelings and reactions to the events at the prom, in addition to her anticipations and expectations of the prom that were disclosed in response to the second discovery requests.  See Tr. at 102:13-25 (Colfax).

The Plaintiffs ended by responding to the Defendants' remarks about the Court reviewing the journal in camera.  The Plaintiffs asserted that they did not propose that course of action,

because the remaining portions of the journal are irrelevant to the case, and because the Defendants have not made any showing otherwise.  They asserted that they therefore do not believe an in camera review is necessary or appropriate.  See Tr. at 102:3-9 (Colfax).  The Plaintiffs added: "But if the Court disagrees with that, I do think that's [the] best solution, because it would be the least intrusive solution to Ms. London's privacy . . . ."  Tr. at 102:9-12 (Colfax).

The Defendants responded that they "don't know that this is an undeniably private document," and asserting that they "[d]on't know what kind of document it is.  We keep saying it's a [diary].  I don't know if it's a diary.  It doesn't read like a diary, it doesn't look like a diary."  Tr. at 102:21-25 (Coppler).  The Defendants asserted that they have "demonstrated . . . why we wanted to probe what the Court has characterized as fertile ground," and stated that "when you look at all of the circumstances about how it was produced, about the fact that the entries in there deal with the prom in a manner that looks odd, the reality is that we want to explore that, and we're entitled to."  Tr. at 103:3-10 (Coppler).  In response to the alleged violation of London's privacy, the Defendants asserted that, hearing the Plaintiffs' argument, counsel is "indicating that she's a young child who's embarrassed about talking about private things.  That hasn't been our experience in the deposition."  Tr. at 103:14-104:2 (Coppler).  The Defendants asked the Court to grant their Motion to Compel to allow them to explore these avenues.  See Tr. 104:3-8 (Coppler).

The Court responded that it would issue an opinion, and that it may review the journal in camera to see if some of the material is so private and irrelevant that it would not be useful to the Defendants.  See Tr. at 104:8-15 (Court).  The Court noted that, if the only basis for disclosure is

the relevance of the journal pages to the emotional-distress damages claim, the Court may review

the journal to determine whether some of the information, "even stretching it in the defendants'

favor" is irrelevant.  Tr. at 104:16-22 (Court).  The Court thus asked Plaintiffs' counsel to obtain

the journal from London and submit it to the Court for the Court's in camera review if it

concludes that an in camera review is necessary.  See Tr. at 104:23-105:7 (Court).  The Court

asked whether the parties have a confidentiality order in place, and when the Plaintiffs responded

that they do not, the Court suggested that they begin working on a confidentiality order.  See Tr.

at 105:13-23 (Court, Colfax).  The Court stated that it will not "look at the journal until I issue

the[] opinion, and then when [the Court] issues the opinion," if an in camera review is necessary,

the Court will perform one and disclose the pages according to that review.  Tr. at 106:7-11

(Court).

## RELEVANT LAW REGARDING DISCOVERY

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's

claim or defense."  Fed. R. Civ. P. 26(b)(1).  Information sought is relevant "if the discovery

appears reasonably calculated to lead to discovery of admissible evidence."  Fed. R. Civ. P.

26(b)(1).  Federal courts have held that the scope of discovery under rule 26 is broad.  See

Gomez v. Martin Marrietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229

F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of

discovery should be broadly and liberally construed to achieve the full disclosure of all

potentially relevant information.").  The federal discovery rules reflect the courts' and Congress'

recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential

to proper litigation."  Hickman v. Taylor, 329 U.S. 495, 507 (1947).  As a result of this policy,

rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter that could bear on any issue that is or may be raised in a case." Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-650 (D.N.M. 2007)(Browning, J.)(internal quotations marks omitted).

A district court is not, however, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir. 2002)(unpublished). "'Discovery . . . is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" Rivera v. DJO, LLC, 2012 WL 3860744, at *8 (quoting Tottenham v. Trans World Gaming Corp., No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. 2002)(Knapp, J.)). See Hardrick v. Legal Servs. Corp., 96 F.R.D. 617, 618 (D.D.C. 1983)(noting that courts do, and should, remain concerned about "fishing expeditions, discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests")(internal quotation marks omitted). "[B]road discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (internal quotation marks omitted).

Courts have recognized that, while it is true that relevancy in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." Zenith Elecs. Corp. v. Exzec, Inc., No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998). Courts have also recognized that "[t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in

discovery." <u>Zenith Elecs. Corp. v. Exzec, Inc.</u>, 1998 WL 9181, at *2 (internal quotation marks omitted).

Rule 26, which once stated that a party may obtain discovery on any matter "relevant to the subject matter," was amended in 2000 to state that the material must be "relevant to the claim or defense of any party." Fed R. Civ. P. 26(b)(1). Under the 2000 amendment, however, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). The Advisory Committee explained that the amendment was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment (stating that the amendment was made with the intent "that the parties and the court focus on the actual claims and defenses involved in the action"). The Advisory Committee further explained:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses, and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.

Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.

Rule 34 requires a party on whom a request for production is served to "state . . . that inspection and related activities will be permitted as requested, unless the request is objected to . . . . If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts." Fed. R. Civ. P. 34(b). Rule 37 provides enforcement mechanisms for rule 34. According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. <u>See</u> Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete

disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(3).  Accord Lewis v. Goldberry, No. 11-0283, 2012 WL 681800, at *4 (D.N.M. Feb. 27, 2012)(Browning, J.).

The Federal Rules of Civil Procedure provide redress for a party's abuses of the discovery process, including failures to disclose.  "As a general rule, the imposition of sanctions for abuse of discovery under Fed. R. Civ. P. 37 is a matter within the discretion of the trial court."  Coletti v. Cudd Pressure Control, 165 F.3d 767, 777 (10th Cir. 1999)(citations and internal quotations omitted).  "'Bad faith is not required for a district court to sanction a party for discovery abuses. Sanctions are proper upon a finding of willfulness, bad faith, or fault on the part of the noncomplying litigant.'"  Stranger v. Checker Auto Parts, No. CIV 05-0632 JB/WPL, 2006 U.S. Dist. LEXIS 95628, at *8 (D.N.M. June 30, 2006)(Browning, J.)(original alterations omitted)(quoting Melendez v. Illinois Bell Tel. Co., 79 F.3d at, 671 (7th Cir. 1996)).  "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment."  Coletti v. Cudd Pressure Control, 165 F.3d at 777 (citations and internal quotations omitted).

### 1.    Discovery of Matters Relevant to an Emotional Damages Claim.

While the scope of discovery generally is broad, courts have recognized that, when a plaintiff alleges "emotional distress, however, the scope of discovery is particularly broad." Moore v. Miller, 2013 U.S. Dist. LEXIS 79568, at *5 (D. Colo. June 6, 2013).  The Court has recognized that "medical and psychological records are generally relevant to . . . claims for emotional pain, suffering, and mental anguish."  E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, No. CIV 02-1644 JB/RHS, 2008 WL 2229489, at *3 (D.N.M. Feb. 14,

2008)(Browning, J.)(citing <u>Owens v. Sprint/United Mgmt. Co.</u>, 221 F.R.D. 657, 659-60 (D. Kan. 2004)). Similarly, the United States District Court for the District of Kansas in 2004 held that "information on Plaintiff's medical and health care providers and records relating to her medical care, treatment and counseling are relevant to . . . 'garden variety' emotional damages under Title VII." <u>Owens v. Sprint/United Mgmt. Co.</u>, 221 F.R.D. at 660.

In <u>E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles</u>, where the defense wished to present evidence at trial that the alleged discrimination victim did not seek counseling, the Court noted that "a victim of discrimination who alleges emotional harm need not present evidence that he or she received professional counseling," and determined that this evidence is therefore "not relevant to the issue [that the alleged victim] was the victim of unlawful discrimination." 2008 WL 2229489, at *4. The Court nevertheless found that the "evidence is relevant to the issue of damages and, particularly, the extent to which, if any, [the alleged victim] sustained emotional injuries." 2008 WL 2229489, at *4. The Court pointed out that "[t]he EEOC made this issue material by seeking damages for emotional harm in its Complaint." 2008 WL 2229489, at *4. The Court thus concluded that "[i]t is reasonable that a jury could determine that [the alleged victim's] failure to seek professional counseling or treatment has a tendency to make the EEOC's claim that he has sustained emotional injuries 'less probable.'" 2008 WL 2229489, at *4 (quoting Fed. R. Evid. 401).

In the context of claims brought under 42 U.S.C. § 1983, although a plaintiff's arrests not related to the incident underlying the particular § 1983 claim present a substantial danger of unfair prejudice, the Court has found on many occasions that the arrests are probative of a plaintiff's alleged emotional distress damages in relation to a false arrest claim, and that the

arrests' probative value outweighs the danger of unfair prejudice.  In <u>Maples v. Vollmer</u>, No. CIV 12-0294 JB/RHS, 2013 WL 1677104 (D.N.M. Mar. 31, 2013)(Browning, J.), for example, in the face of plaintiff's § 1983 claim for false arrest and excessive force, in which the plaintiff brought a claim for emotional distress damages, the defendants, to rebut the damages claim, sought to introduce evidence of two previous similar encounters that ended with the police handcuffing the plaintiff.   The Court concluded that, if the plaintiff "opens the door for admission of further relevant information about his criminal history by adhering to his decision to pursue emotional-distress damages at trial," the Court would "allow the Defendants to bring out the circumstances in two probative prior incidents [with police] so that the Defendants can use those incidents to provide context in rebutting Maples' alleged emotional-distress damages." 2013 WL 1677104, at **1-2.

Similarly, in   <u>Mata v. City of Farmington</u>, 798 F. Supp. 2d 1215 (D.N.M. 2011)(Browning, J.), the defendants, to rebut the plaintiff's emotional-distress damages claim related to a § 1983 claim, sought to introduce a number of  the plaintiff's previous run ins with the Farmington, New Mexico Police Department, including previous arrests and violent encounters.   The Court concluded that, if the plaintiff, Mata, continued to allege emotional distress damages at trial, the Court would "allow the Defendant Officers to question Mata and his witnesses regarding Mata's other interactions with the FPD, arrests, and violent encounters." 798 F. Supp. 2d at 1238.  The Court further concluded that the danger of unfair prejudice does not outweigh the evidence's probative value, because the Court will "allow[] Mata . . . to explain why he believes that those incidents that the Defendant Officers have raised do not eliminate or reduce the emotional distress damages which he seeks."  798 F. Supp. 2d at 1238.

Additionally, the Court has found that pursuit of emotional distress damages opens the door to finding that cocaine use is relevant to a claim for emotional distress damages, because it allows the defense to explore the effect of cocaine use on a plaintiff's mental and emotional condition in comparison with the underlying incident. Recently, in <u>Solis-Marrufo v. Bd. of Comm'rs for Cnty. of Bernalillo</u>, No. CIV 11-0107 JB/KBM, 2013 WL 1658203 (D.N.M. Mar. 28, 2013)(Browning, J.), the Court concluded that the plaintiff's cocaine use was "relevant to contradict any mental and emotional distress that he asserts the Individual Defendants caused." 2013 WL 1658203, at *1.  The Court then ruled that it would "permit the Individual Defendants to inquire into the effect of [the plaintiff's] cocaine use on his mental and emotional state to contradict [the plaintiff's] asserted mental and emotional distress damages."  2013 WL 1658203, at *1.  The Court cited there to its 2005 decision in <u>Chamberlin v. City of Albuquerque</u>, No. CIV 02-0603 JB/ACT, 2005 WL 2313515 (D.N.M. July 31, 2005)(Browning, J.), in which the defendants sought to introduce evidence of the plaintiff's "uncharged misconduct, drug and alcohol abuse, and history of mental illness," to rebut the plaintiff's "garden variety emotional distress damages" claim within his § 1983 claim.   2005 WL 2313515, at *2.  The Court concluded: "Because Chamberlin's uncharged misconduct, drug and alcohol abuse, and mental illness is relevant to rebut Chamberlin's claim of damages, the Court will allow [the defendant] Lehocky to introduce certain specific instances of Chamberlin's prior conduct . . . ."  <u>Chamberlin v. City of Albuquerque</u>, 2005 WL 2313515, at *2.  The Court thus allowed the defendant, Lehocky, to inquire about the plaintiff's drug use, but precluded further possible prejudicial inquiry if the plaintiff answered truthfully:

> The Court will allow Lehocky, when cross examining Chamberlin, to inquire about his use of methamphetamine and cocaine in 1985 and 1986,

respectively. If Chamberlin admits to this use, then the Court precludes Lehocky from making any further inquiry into these drug-related arrests; Lehocky may not inquire about the manufacturing of methamphetamine, the search warrants, or the arrests. If, however, Chamberlin denies using methamphetamine and cocaine, the Court may allow more evidence surrounding these incidents to be admitted, the scope of which the Court will decide on a question-by-question basis at trial.

Chamberlin v. City of Albuquerque, 2005 WL 2313515, at *2.

### 2.    **Discovery of Diaries or Journals.**

The few cases that the parties cite and that the Court has found that relate to discovery disputes over a diary have refused to order disclosure of an entire diary or journal when a party cannot "identify specific information that was in the diary but has not been turned over," or where the party does not "alleg[e] . . . bad faith." Ayala v. Tapia, CIV. A. 90-1345(RCL), 1991 WL 241873 (D.D.C. Nov. 1, 1991)("Absent the ability to identify specific information that was in the diary but has not been turned over or an allegation of bad faith, the defendant must accept that the diary may not contain what he had hoped.").

In Cooke v. New Mexico Junior College Board, where the plaintiff "repeatedly offered" to provide the defendants pages relevant to his § 1983 claim, and also offered to permit the court to review in camera the rest of his journal, the Tenth Circuit held that a plaintiff need not comply with the defendants' discovery request to produce the entire journal, covering a twenty-six month period, because "[t]he only possible reason the defendants would want to inspect and copy non-relevant entries would be to cause embarrassment." 579 F.2d at 570. The plaintiff, Cooke, brought a § 1983 claim alleging that the New Mexico Junior College retaliated against him in violation of his rights under the First Amendment to the United States Constitution, for "certain utterances made by him in his classroom." 579 F.2d at 569. During Cooke's deposition, he was asked about a conversation he had with the college's vice president on February 3, 1972, and

Cooke told the defendants that he had to review his diary to recount the conversation.  See 579 F.2d at 569.  When the defendants asked Cooke to read into the record the journal entry, Cooke did so.  See 579 F.2d at 569.  The defendants then asked for a copy of the journal, which Cooke refused to provide.  Cooke stated, however, that "any entry in Cooke's diary which related to the lawsuit would be made available to the defendant."  579 F.2d at 569.  Unsatisfied, the defendants requested under rule 34 that Cooke produce and permit the defendants to copy and inspect "all diaries or chronological notes by the plaintiff, whether in one volume or more or uncompiled; which diary[,] diaries, or notes cover the continuous time between . . . May 1, 1973, through June 30, 1975."  579 F.2d at 569.

When Cooke did not comply with the defendants' request, they filed a motion to compel production of the diary.  See 579 F.2d at 569.  At the hearing on the motion to compel, Cooke's counsel objected, asserting that "there were many entries which were personal in nature and did not relate in any manner to the present litigation."  579 F.2d at 570.  Cooke's counsel offered, however, to submit copies of "any and all entries in the diary which in any way related to the present controversy between the parties.  In addition, [counsel] further agreed to permit the magistrate, or the court, to edit the diary and make certain that all pertinent entries had been disclosed."  579 F.2d at 570.  Based on this hearing, the magistrate judge granted the order to compel and ordered Cooke to produce the journal.  See 579 F.2d at 570.  When Cooke refused to comply with the magistrate's order, the district court granted the defendants' motion to dismiss the case.

The Tenth Circuit reversed the district court's dismissal, holding that Cooke's "offer to produce relevant entries should be amply sufficient to satisfy the defendants in their discovery

efforts." 579 F.2d at 570.  The Tenth Circuit recognized that rule 26 permits discovery "'regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery,'" but it also noted that "Cooke concedes that certain entries in his diary are relevant to his dispute with the College, and he has repeatedly offered to provide the defendants with copies of such entries." 579 F.2d at 570.  The Tenth Circuit also pointed out that Cooke offered to permit the court to review in camera the diary to ensure that all relevant entries were produced.  See 579 F.2d at 570.  The Tenth Circuit thus noted: "This, then, is not an instance where the plaintiff is stonewalling . . . .  Surely the defendants do not want to waste valuable time in reading entries in Cooke's diary which are purely personal in nature and in no manner relate to his dispute with the College."  579 F.2d at 570.  The Tenth Circuit concluded that "[t]he only possible reason the defendants would want to inspect and copy non-relevant entries would be to cause embarrassment," and reversed the district court, pointing out that rule 26(c) "permits a trial judge to enter protective orders which will protect a party from annoyance, embarrassment, oppression, or undue burden."  579 F.2d at 570 (internal quotation marks omitted).

In Simpson v. University of Colorado, the Honorable Craig B. Shaffer, United States Magistrate Judge for the United States District Court for the District of Colorado, refused to grant the defendant's motion to compel production of the plaintiff-student's diary in its entirety, but nevertheless ordered the plaintiff, Simpson, to produce thirty-four additional journal entries, which "are encompassed by Plaintiff's own interpretation of relevance."  220 F.R.D. at 360-61. Simpson brought a claim based on Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a), alleging that the University of Colorado's deliberate indifference to the football players'

and recruits' repeated acts of sexual harassment, and its failure to take appropriate measures, led to the football recruits' sexual assault and sexual harassment of her in December, 2001. See 220 F.R.D. at 357-58. Simpson also brought a claim for emotional distress damages, alleging that she "has suffered and continues to suffer from considerable anxiety regarding her safety and well-being while on the University of Colorado campus and elsewhere." 220 F.R.D. at 358 (internal quotation marks omitted).

The defendant moved to compel production of Simpson's diary, arguing that "Simpson's contemporaneous diary entries are directly relevant to her claim for emotional distress and may disclose other stressors or traumas in Plaintiff's life unrelated to the University's actions which are responsible for her alleged damages." 220 F.R.D. at 358. Simpson "voluntarily produced diary excerpts that describe the events of December 7-8, 2001, and Ms. Simpson's reactions to those events." 220 F.R.D. at 358. The defendant nevertheless moved the court to order production of additional entries contemporaneous with the alleged assault. See 220 F.R.D. at 358. Simpson, in relation to the motion to compel, conceded that her diary was not privileged, and also conceded "that entries in Ms. Simpson's diary are relevant and discoverable to the extent that they describe the events of December 7-8, 2001, or Ms. Simpson's reaction to the alleged sexual assaults." 220 F.R.D. at 359-60. Judge Shaffer pointed out that Simpson thus voluntarily had "produced entries that discuss the alleged assaults, describe her emotional state in the aftermath of those assaults, and discuss her post-assault adjustments to school life." 220 F.R.D. at 360.

Judge Shaffer noted that, "[g]iven Plaintiff's concessions as to relevance and her own criteria for disclosure of the diary entries, I cannot summarily reject Defendant's motion as an

- 32 -

unfounded 'fishing expedition.'" 220 F.R.D. at 360. In his in camera review, Judge Shaffer accordingly found that, based on Simpson's concessions, thirty-four additional diary entries relevant, and ordered Simpson to produce those entries: "I find that additional diary entries in Ms. Simpson's diary are relevant and should be produced. In the main, these additional disclosures simply address subjects or complete diary passages that Ms. Simpson voluntarily disclosed." 220 F.R.D. at 360. Judge Shaffer ordered these passages to be disclosed, however, subject to the parties' protective order, under which the original diary pages were disclosed, and ordered that they "may not be disclosed to anyone, other than counsel and Ms. Simpson, without a prior court order." 220 F.R.D. at 361.

## LAW REGARDING PROTECTIVE ORDERS

"Federal district courts have broad discretion over discovery." Morales v. E.D. Etnyre & Co., 229 F.R.D. at 662. "The trial court has discretion to grant a protective order pursuant to rule 26(c) of the Federal Rules of Civil Procedure." Morales v. E.D. Etnyre & Co., 229 F.R.D. at 696 (citing Thomas v. Int'l Bus. Machines, 49 F.3d 478, 482 (10th Cir. 1995)). Rule 26(c) provides that, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which order may include forbidding disclosure or discovery. Fed. R. Civ. P. 26(c)(1)(A). Accord Miller v. Regents of the Univ. of Colo., 188 F.3d 518, 1999 WL 506520, at *12 (10th Cir. 1999)(unpublished table decision)(reasoning that "[t]he district court is in the best position to weigh these variables and determine the appropriate limits because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties").

"Federal Rule of Civil Procedure 26(c) expressly limits who may move for a protective order to parties or the person from whom discovery is sought." SEC v. Dowdell, 144 F. App'x 716, 722-23 (10th Cir. 2005)(unpublished)(noting that a third party may not move for a rule 26(c) protective order if it is not a party to the underlying action, has not intervened, or has not been served a subpoena seeking discovery). "It is the party seeking the protective order who has the burden to show good cause for a protective order." Velasquez v. Frontier Med. Inc., 229 F.R.D. 197, 200 (D.N.M. 2005)(Browning, J.). Accord Murphy v. Gorman, 271 F.R.D. 296, 303 (D.N.M. 2010)(Browning, J.). The party seeking the protective order must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981)(internal quotation marks omitted).

Although rule 26(c) is silent regarding the time within which the movant must file for a protective order, the Tenth Circuit has held that "a motion under [rule] 26(c) for protection . . . is timely filed if made before the date set for production." In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d 620, 622 n.2 (10th Cir. 1982)(quoting language from In re Halkin, 598 F.2d 176, 193 (D.C. Cir. 1979), overruled on other grounds by Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984)). A party must seek a rule 26(c) protective order from the same court that issued the subpoena. See United States ex. rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 444 F.3d at 468 ("[A]ny disputes that arise over the subpoena of a nonparty are decided by the court that issued the subpoena")(citing Fed. R. Civ. P. 45(c)(2)(B)). See also Res. Assocs. Grant Writing & Evaluation Servs., LLC, v. Maberry, No. CIV 08-0552 JB/LAM, 2009 WL 1300561, at *14 (D.N.M. Feb. 5, 2009)(Browning, J.)(explaining that

- 34 -

disputes arising "over the subpoena of a nonparty are decided by the court that issued the subpoena")(citing <u>United States ex. rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.</u>, 444 F.3d at 468).

## <u>ANALYSIS</u>

The Defendants have made a sufficient showing that, because the circumstances around the journal entries and because of the way that the Plaintiffs produced the journal entries in response to the Defendants' discovery requests, the Plaintiffs' production of London's original bound journal in its entirety may lead to evidence that the produced pages are not authentic and were written much later to support the Plaintiffs' claims, thus impeaching London's and the Plaintiffs' credibility.  Because investigation of the Defendants' concern requires that the Defendants be permitted to view, to the extent possible, the entire, original journal, the Court will grant the Defendants' request to produce, to the extent possible, London's complete bound journal.  Second, because London, and not her attorneys, made the decision what pages in her journal were responsive to the Defendants' discovery requests and discoverable, the Court concludes that the Defendants have made an adequate showing that, especially given London's claim for emotional distress damages, there may be additional relevant and discoverable entries and pages.  Because the Court concludes that it should compel the production of the entire journal on other grounds, the Court need not require the Plaintiffs to further disclose particular pages or entries, and will also not review in camera the journal to make its own determination about additional discoverable material.  Finally, because London made the decision which pages were responsive to the Defendants' discovery requests without her attorneys at least viewing the entire journal's contents before representing that any additional, unproduced pages were not

relevant to any claims or defenses in the case, the Court find that the Plaintiffs' objections are not substantially justified. The Court will therefore require, under rule 37(a)(5)(A), the Plaintiffs to pay the Defendants' reasonable expenses incurred in making the motion, including attorney's fees.

I.    **THE COURT WILL COMPEL THE PLAINTIFFS TO PRODUCE LONDON'S ENTIRE, ORIGINAL JOURNAL FOR THE DEFENDANTS' REVIEW.**

The Plaintiffs have already produced, twice, limited pages from London's journal that they assert are responsive to the Defendants' discovery requests. The Defendants move the Court to compel the Plaintiffs to produce the journal in its entirety, however, because they believe that the circumstances surrounding the journal entries which the Plaintiffs provided them and the circumstances surrounding the Plaintiffs' second disclosure "provides grounds for doubting [London's] credibility." Motion to Compel at 12. They point out several "odd qualities" surrounding the first production, which raised their suspicion whether the journal entry is, as the Plaintiffs represent, a genuine journal entry that London wrote after the prom for purposes unrelated to this lawsuit. Motion to Compel at 9. They add that the journal entries, written before and after the prom, may be relevant to her emotional-distress damages claim. See Motion to Compel at 10. The Court agrees and will compel the Plaintiffs to produce to the Defendants London's entire, original journal. The Court will, however, order the production subject to a protective order, limit the production to the Defendants' attorneys' eyes only, and order that the Defendants' Attorneys not disclose the journal's contents without first receiving the Court's permission to do so.

Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and also provides that "[r]elevant

information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Evid. 26(b)(1). Accordingly, the Court has recognized that discovery's scope is broad. See, e.g., Sanchez v. Matta, 229 F.R.D. at 654 ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information."). Moreover, when, as here, a plaintiff alleges emotional distress damages "the scope of discovery is particularly broad." Moore v. Miller, 2013 U.S. Dist. LEXIS 79568, at *5. The Supreme Court of the United States has recognized that the breadth of discovery comes from the general proposition that the public is entitled to the evidence that a party represents supports the party's claim:

> "For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule."

Jaffee v. Redmond, 518 U.S. 1, 9 (1996)(alteration in original)(quoting United States v. Bryan, 339 U.S. 323, 331 (1950)).

Nevertheless, with regard to discovery, the Federal Rules of Civil Procedure contemplate the trial court's ability to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Courts around the country have recognized that disclosing a person's generally private matters may cause embarrassment. See, e.g., Jaffee v. Redmond, 518 U.S. at 10 ("Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace."); Shabazz v. Pico, 93 CIV.

1424 (SS), 1997 WL 13772, at *1 (S.D.N.Y. Jan. 14, 1997)("Because it is unnecessarily oppressive, involves a largely private manner whose disclosure could prove embarrassing [sic] in a prison, . . . the Court sustains the defense objections to disclosing defendant Pico's salary."). Cf. Van Bourg, Allen, Weinberg & Roger v. N.L.R.B., 751 F.2d 982, 985 (9th Cir. 1985)(holding that the NLRB need not disclose documents which described "in painful detail the personalities . . . of employers, union members and officials," because of the concern for "substantial risk of embarrassment for, and reprisals against, the authors and subjects of the documents").  As the Honorable Thurgood Marshall, Associate Justice of the Supreme Court, noted: "Diaries and personal letters that record only their author's personal thoughts lie at the heart of our sense of privacy.'"  Couch v. United States, 409 U.S. 322, 350 (1973).  A number of courts have therefore limited discovery when parties seek production of a plaintiff's diary.  See, e.g., Combe v. Cinemark USA, Inc., 1:08-CV-00142-TS-DN, 2009 WL 2578853 (D. Utah Aug. 19, 2009)(ordering that plaintiff provide "journal entries related the subject matter of the claims in this suit," and reasoning that, "[w]ithout any limit on relevancy, the entire journal is not discoverable. A plaintiff does not expose her entire private life to adverse scrutiny by filing suit"); Ayala v. Tapia, 1991 WL 241873, at *2 (noting that the court's denial of the defendant's motion to compel production of diaries is "mandated by the personal nature of the documents sought.  Most of the material demanded will be irrelevant to this case, but of intimate importance to the plaintiff").

The Plaintiffs cite to a number of these cases to support their contention that the journal's contents, aside from that which the Plaintiffs already provided, "'will be irrelevant to the case, but of intimate importance to the plaintiff,' which justifies 'denying defendant's motion to

compel production . . . because of the personal nature of the documents sought.'" Response at 4-5 (quoting <u>Ayala v. Tapia</u>, 1991 WL 241873, at **1-2). These cases, however, are distinguishable, because the Defendants have pointed out circumstances related to the journal entries and related to the manner in which the Plaintiffs produced the journal that were not present in the cited cases. There are two important factors that distinguish the Defendants' Motion to Compel here from the motions in the other cases, and which counsel the Court to require the Plaintiffs to disclose the journal.

First, the Defendants articulate a particular reason for which they need to view the entire, original journal: to authenticate the first journal entry that the Plaintiffs produced, because they are concerned that the journal entry "may have been written much later for the primary purpose of supporting the Plaintiffs' claims." Motion to Compel ¶ 7, at 3. The Defendants note that the language in the first journal entry that Plaintiffs' counsel produced in response to the Defendants' first discovery requests "is extremely self serving, focusing primarily on the searches that are the subject of this law suit, and stated in terms similar to those used in the original Complaint," which the Plaintiffs filed "months before Arianna London became a party in this case." Motion to Compel ¶ 6, at 3. While a self-serving journal entry, focusing on allegedly unconstitutional searches that included security guards "grop[ing] . . . boobs" at a high school dance, London's First Production at 1, may not be a compelling reason to compel a party to disclose a high school student's entire journal, that the journal entry is "stated in terms similar to those used in the original Complaint," Motion to Compel ¶ 6, at 3, provides more support for disclosure. It also distinguishes the facts of this case and the basis of the Motion to Compel from that in <u>Ayala v. Tapia</u>, in which the court noted that one basis on which it relied in refusing to

order production of an entire diary was that the "Defendant has not alleged any basis for asserting that the diaries are somehow fraudulent or altered after they were originally written." 1991 WL 241873, at *2.  Here, while the Defendants, likely in light of rule 11, have not specifically alleged that the diaries are somehow fraudulent or altered after they were originally written, they have, since the first entry's production, been "concerned," and have thus asked to "examine the produced entry in place in the journal to see if it seemed to be in a correct position temporally among the other entries and, among other things, to check if its style conformed with other entries."  Motion to Compel ¶ 8, at 3.

Related to this first factor are the facts surrounding the journal entries produced. Although the Court agrees with the Plaintiffs that there is no proper or right way to journal, there are qualities about the journal pages produced that raise reasonable concern whether the entries were written at the time and for the reasons that the Plaintiffs represent they were.  The particular journal entry that raised the Court's concern is the journal page which the Plaintiffs represent London wrote the afternoon of the prom.  London concedes that she does not regularly write in her journal, and yet she wrote a page explaining that she "want[s] this to be the best memory of my entire high school career" sometime after she "just got back from helping set up for prom" and before she got ready for the prom.  London's Second Production at 1.  Given that, up to that point, according to London, she had written fifty-nine pages over almost a year's time, the Defendants have a point in contending that this journal entry, written on the day of the prom, and not disclosed in response to their first discovery request, is "odd."  Motion to Compel at 9.  Thus, although much of the evidence in London's journal may implicate privacy concerns, and may thus not be admissible at trial, these circumstances show that the object of the Defendants'

inquiry has some evidentiary value.  See Zenith Elecs. Corp. v. Exzec, Inc., 1998 WL 9181, at *2 ("[T]he object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue.").

The second distinguishing factor is that Plaintiffs' counsel did not review the journal before producing the journal entries in response to either of the Defendants' two discovery requests.  The Tenth Circuit in Cooke v. New Mexico Junior College Board relied heavily, in holding that the defendants were not entitled to compel production of over two years of journal entries, on the fact that the plaintiff's "Counsel" conceded that multiple journal "entries in his diary are relevant" and that the plaintiff's "Counsel" "offered to permit the trial court, or other neutral designate to thereafter inspect his diary and make certain that all relevant entries should be amply sufficient to satisfy the defendants in their discovery efforts."  579 F.2d at 570. Because of these representations and the lengths to which the plaintiff was willing to go to assure the defendants that he had produced all of the relevant portions of the diary, the Tenth Circuit specifically pointed out that "[t]his, then, is not an instance where the plaintiff is stonewalling, and his offer to produce relevant entries should be amply sufficient to satisfy the defendants in their discovery efforts."  579 F.2d at 570.  Here, however, in response to the Defendants' first requests for production, the Plaintiffs did not produce multiple journal entries, but only a single journal entry purporting to be written the day after the prom, and the Plaintiffs, after the Defendants' objection, did not offer to allow the Court to review the journal in camera.

When the Court inquired about the circumstances of the journal entry's production, the fact came out that it was London, rather than the Plaintiffs' counsel, who had produced the single journal entry.  See Tr. at 95:20-96:5 (Colfax).  In other words, it was London, a high school

student and one of the Plaintiffs in the case, and not her attorney, who made the decision that this entry only was responsive -- i.e., "relevant to any party's claim or defense" under rule 26 -- to the Defendants' discovery requests.  The Plaintiffs responded that, given the journal's private nature, when the diary is fully exposed, even to a party's attorneys, it "changes the character of that privacy of that diary regard[less] of who reads it," and so a diary or journal is distinguished from other documents parties may encounter in discovery.  Tr. at 95:20-96:5 (Colfax).  The Plaintiffs asserted that they do not believe that "th[e] fact that Ms. London had given us this set of documents from the diary really changes the nature of the fact that there are always decisions [and] cuts that are being made by parties."  Tr. at 96:13-21 (Colfax).  The Court disagrees.

The New Mexico Rules of Professional Responsibility, which the Court's local rules adopt as its own, advise that, while the goal and the ultimate decisions in a lawsuit are the party's decisions to make, the means of litigation is the attorney's job.  See N.M. R. Prof'l Conduct, Rule 16-102 ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued."); D.N.M.LR-Civ. 83.9 ("The Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court order.").  See also, Ann. Mod. Rules Prof. Cond. § 1.2(a) ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation and . . . shall consult with the client as to the means by which they are to be pursued.").  Parties generally have a difficult time understanding, and sometimes a more difficult time accepting, discovery's broad scope under the Federal Rules of Civil Procedure. In its years in private practice before taking the bench, the Court often had to explain, if not hold a party's hand through, the process of discovery.  Indeed,

sometimes it had to beat on its client to produce documents the client did not want to produce. The Court knew that, if it missed an important document, even if that document was nowhere physically near where it should have logically been located, neither the court nor the opposing party would accept that its client, whether adult or adolescent, had given the Court its documents that it believed were responsive.  Whereas the Plaintiffs' counsel responded to London's production of the journal entries by stating that "we are not going into people's houses and saying[:] [alright,] I'm going to look at all of your file [drawers] and all your documents and decide what is responsive or not," that is what comes with being a litigator. And that is what comes with filing a lawsuit, especially when alleging emotional distress damages.

The Court is not saying that the Plaintiffs are "stonewalling" the defendants.  Cooke v. N.M. Junior Coll. Bd., 579 F.2d at 570.  And the Court is not saying that parties in dispute about allegedly private materials should hand the journal or diary over to the Court for in camera review, and leave it to the Court to sort through the parties' discovery dispute.  Rather, the Court concludes that, to invoke the Court's protection from compelled discovery, the attorneys must come to the Court having done their due diligence first.  To object to a discovery request on the grounds that "[t]he remaining pages are, of course, deeply personal and private and unrelated to the matters at issue in this case," when a plaintiff has produced only "the pages from [the plaintiff's] journal [entry] related to her experience at the prom," Journal Discovery Dispute Electronic Mail Transmissions at 3, without the plaintiff's attorney having looked at the pages which the attorney represents, subject to rule 11, are unrelated to the matters in the case, is not sufficient to "satisfy the defendants in their discovery efforts."  579 F.2d at 570.  That London, without the Plaintiffs' counsel's advice and without showing the Plaintiffs' counsel the entire

journal,  determined that only the pages she disclosed are responsive to both of the Defendants' production requests is sufficient for the Court to conclude that the facts here are distinguished from other cases.  It is also not a sufficient basis on which the Court can conclude that "[t]he only possible reason the defendants would want to inspect and copy non-relevant entries would be to cause embarrassment."  579 F.2d at 570.

The Defendants have made a reasonable showing that the Plaintiffs' production of the entire journal in its original form -- or as close as reasonably possible to its original form -- may show that the journal entries are not authentic and genuine, or are not consistent with London's and the Plaintiffs' representations about them.  In other words, their contention that the journal entry "may have been written much later for the primary purpose of supporting the Plaintiffs' claims" is plausible.  Motion to Compel ¶ 7, at 3.  If these concerns turn out true, and London misrepresented the facts about these journal entries, and produced these journal entries after the prom and with the intent that they would become self-serving evidence for the trial, that information is fertile ground for impeachment, and is relevant to this case. Accordingly, the Court will compel the Plaintiffs to produce for the Defendants' review the entire, original journal.

## II.   THE COURT CONCLUDES THAT ADDITIONAL JOURNAL ENTRIES SHOULD ALSO BE DISCLOSED, BECAUSE THEY WILL LIKELY LEAD TO EVIDENCE RELEVANT TO HER EMOTIONAL DISTRESS DAMAGES.

The Defendants argue that "[a]nother reason School Defendants sought the complete, original Journal is that it is certainly relevant to Plaintiff's claim for . . . . significant emotional damages."  The Defendants assert: "Clearly, a diary or journal, kept during the relevant time period, is important evidence regarding her emotional state before and after the Prom."  Motion

to Compel at 11.  The Plaintiffs respond that "[t]he mere making of a garden-variety emotional distress claim does not give Defendants complete license to discover any information related to any aspect of Plaintiff's life."  Response at 9.  The Court concludes that London's emotional-distress damages claim broadens discovery's scope and will compel London to produce all journal entries because they may lead to evidence relevant to her emotional-distress damages claim.

The Plaintiffs contend that, "[a]s a general matter, courts have not permitted the production of a diary where its purported relevance is merely that the entries may relate in some undefined way to a plaintiff's emotional state and therefore be relevant to damages."  Response at 8.  To support this proposition, however, the Plaintiffs cite, as an e.g. cite, to Simpson v. University of Colorado, in which, although Judge Shaffer did not grant the defendants' motion in full, and require wholesale disclosure of the plaintiff's diary, he nevertheless required the plaintiff to produce thirty-four additional, previously undisclosed, diary entries.  See 220 F.R.D. at 360-61.  There also, the plaintiff alleged emotional distress damages, and had previously disclosed multiple diary "entries that discuss the alleged assaults, describe her emotional state in the aftermath of those assaults, and discuss her post-assault adjustments to school life."  220 F.R.D. at 360.  Given that London, like the plaintiff in Simpson v. University of Colorado, alleges emotional distress damages, the Court will require her to disclose any additional journal entries or passages that may "lead to the discovery of admissible evidence" relevant to her emotional distress claim.  Fed. R. Evid. 26(b)(1).

Although here, as in Simpson v. University of Colorado, London has also produced journal entries that are related to the prom and her reaction to the prom, the Court is not

convinced that, given the Plaintiffs' counsel has not studied the journal, she has disclosed all material responsive to the Defendants' second request for production related to the journal. While Judge Shaffer did not say that the plaintiff's counsel in <u>Simpson v. University of Colorado</u> had seen the diary at issue, Plaintiffs' counsel admits that he has not -- or, at least, at the time of the hearing, had not -- looked through London's journal entries to determine their relevance to the Defendants' discovery requests. <u>See</u> Tr. at 95:20-96:21 (Colfax). Judge Shaffer found that, faced with the plaintiff's claim for emotional distress damages, an additional thirty-four passages were discoverable; similarly, the Court concludes that it is even more likely here that London's journal contains responsive, discoverable passages that the Plaintiffs have not yet disclosed.

For example, the Defendants point out that London testified in her deposition that she sought out "a counselor at [The University of New Mexico] just because of all the things that I've sort of been dealing with both in school and at home and -- both with the things that are involved in the case and things that happened prior to the case." Motion to Compel at 11 (internal quotation marks omitted) (quoting London Depo. at 225:6-11). The Court has specifically concluded that counseling and even a failure to seek counseling, while not relevant to the merits of a discrimination claim, is relevant to emotional distress damages: "It is reasonable that a jury could determine that [the alleged victim's] failure to seek professional counseling or treatment has a tendency to make the EEOC's claim that he has sustained emotional injuries 'less probable.'" <u>E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles</u>, 2008 WL 2229489, at *4. Thus, while the Plaintiffs are correct that "[t]he mere making of a garden-variety emotional distress claim does not give Defendants complete license to discover any information related to any aspect of Plaintiff's life," Response at 9, it nevertheless broadens

the otherwise already broad scope of discovery and puts at issue evidence that the Court may otherwise keep out.  See, e.g., Mata v. City of Farmington, 798 F. Supp. 2d at 1238 (concluding that, if the plaintiff continued to allege emotional distress damages at trial, the Court would "allow the Defendant Officers to question Mata and his witnesses regarding Mata's other interactions with the FPD, arrests, and violent encounters").  See also Comm'rs for Cnty. of Bernalillo, 2013 WL 1658203; Chamberlin v. City of Albuquerque, 2005 WL 2313515.  In light of the effect that allegations of emotional distress damages has on relevant information at trial, and, by extension, discoverable information, the Court is not convinced that allowing the Defendants access to London's journal, which London's attorney did not review in the first place for discoverable material, would subject the Defendants to a needless "waste of valuable time in reading entries in [London's] diary which are purely personal in nature and in no manner relate to [her] dispute with the [Defendants]."  Cooke v. N.M. Junior Coll. Bd., 579 F.2d at 570.  These considerations counsel the Court to conclude that there remain discoverable journal entries in London's journal.

In the cases that the Plaintiffs cite to the Court, however, the plaintiffs, without exception, offered the journal to the court for in camera review to "make certain that all relevant entries have been given [to] the defendants."  Cooke v. N.M. Junior Coll. Bd., 579 F.2d at 570.  The Plaintiffs did not offer to produce the journal for the Court's in camera review.  At the hearing, however, the Plaintiffs stated that, "if the Court disagrees" with their contention that the journal is irrelevant to her emotional distress damages, which the Court does, they "think that that's . . . the best solution, because it would be the least intrusive solution into Ms. London's privacy." Tr. at 102:5-12 (Colfax).  This solution -- the Court's in camera review -- in light of the Tenth

Circuit's decision in <u>Cooke v. New Mexico Junior College Board</u> may be the proper procedure at the point that the parties have made good-faith efforts in coming to an agreement about disclosure of a diary's or journal's contents.  Because it appears that London made the determinations whether any of her journal entries are discoverable, even aside from the Court's conclusion about the implication of the emotional-distress damages claim on discovery, the Court is not convinced that the parties have made that good-faith effort.  Thus, the Court's in camera review of the diary, without providing the Plaintiffs an opportunity to respond in good faith to the Defendants' discovery requests in light of the Court's decisions here, is not proper at this juncture

  The Plaintiffs have forfeited this layer of protection, tossing in the request for the Court's in camera review of the journal at the end of the hearing, when it looked like they were going to lose the Motion to Compel.  If the Plaintiffs wanted the protection of an in camera review, they should have sought that review during motions practice or during their argument, rather than as an afterthought.  Also, there are not many pages to review; there are not years of journaling, but only sporadic entries.  The degree of any invasion of London's privacy is likely to be little.  In addition, while the Court certainly does perform in camera reviews, they are tough, because they lack adversarial qualities.  The Court has to put itself in the shoes of Defendants' counsel and decide on its limited knowledge about the Defendants' case whether the Defendants' counsel could use the evidence.  Moreover, because the Court concludes that the Plaintiffs must disclose -- to the extent possible -- London's entire, original journal to the Defendants so that the Defendants may determine the entries' authenticity, however, the Court need not decide the propriety of an in camera review.  Finally, because the Court is going to put the journal under a

confidentiality order with attorneys' eyes only review, the invasion of privacy will be minimal;

the Court, its clerks, and staff will be on less group of people who will, at this stage, see the

journal's contents.

### III.   THE COURT WILL REQUIRE A CONFIDENTIALITY ORDER IN RELATION TO LONDON'S JOURNAL'S CONTENTS, AND ORDER THAT THE DEFENDANTS' COUNSEL ONLY CAN REVIEW THE EVIDENCE AND THAT THEY  CANNOT DISCLOSE THE INFORMATION OBTAINED WITHOUT A COURT ORDER.

Although the Court concludes that the Defendants have shown reasonable grounds that

counsel the Court to compel the Plaintiffs to disclose the entire, original journal, the Court will

nevertheless protect London's privacy to the extent that this protection is possible.  The Court

recognizes that London's journal contains her "private thoughts," and that disclosure of those

thoughts might subject her to significant "embarrassment."  Quiroz v. Hartgrove Hosp., No. 97-

C-6515, 1998 WL 341812, at *1 (N.D. Ill. June 12, 1998).  The Court is also cognizant that

discovery's scope is broader than trial.  By filing a lawsuit, a plaintiff necessarily exposes some

facts that he or she may like to keep private in the suit from the opposing party's discovery.

Nevertheless, "[i]n modern litigation, attorneys do most of the work for litigation, and public

officials [named as the defendants] often do not know that discovery and depositions are taking

place -- except as to them -- until settlement negotiations or trial is near."  Herrera v. Santa Fe

Pub. Sch., No. CIV 11-0422 JB/KBM, 2012 WL 6846393, at *11 (D.N.M. Dec. 20,

2012)(Browning, J.).  Thus, if London has disclosed all the relevant material in her journal, and

if her entries are authentic, then only the Defendants' counsel will likely know about any of her

private thoughts written in her journal.  Regardless whether that turns out to be the case, because

"the trial court is given wide discretion in balancing the needs and rights of both plaintiff and

defendant," <u>Gomez v. Martin Marietta Corp.</u>, 50 F.3d at 1520 (internal quotation marks omitted), and in light of the protections that courts and the Tenth Circuit have afforded plaintiffs in relation to their diaries or journals, the Court will order the plaintiffs to enter into a confidentiality order in relation to the Plaintiffs' production and the Defendants' review of the journal.  Before the Plaintiffs produce to the Defendants London's journal in its complete, original form, the parties must enter a confidentiality agreement and agree that London's journal will be produced on an attorneys' eyes only basis, and that the Defendants' attorneys are not to disclose the journal's contents, to other than London and Plaintiffs' counsel, unless they first seek the Court's order to do so.

## IV.   THE COURT WILL REQUIRE THE PLAINTIFFS TO PAY THE DEFENDANTS' REASONABLE COSTS AND FEES ASSOCIATED WITH THE MOTION TO COMPEL.

Rule 37(a)(5)(A) provides that, upon granting a motion to compel, the Court is generally required to award fees and costs to the successful party:

> **(A)** *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted -- or if the disclosure or requested discovery is provided after the motion was filed -- the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified.

Fed. R. Civ. P. 37.  Although the Plaintiffs contend that the issues involved with discovery of a diary counsel that their objection here was substantially justified -- and although the Court would normally agree -- the circumstances surrounding the failure of the Plaintiffs' counsel to review London's journal before representing that the journal's "remaining pages are, of course, deeply personal and private and unrelated to the matters at issue in this case," Journal Discovery Dispute

Electronic Mail Transmissions at 3, leads the Court to conclude otherwise. As the courts concluded in the cases that the Plaintiffs cited to the Court, there are significant privacy interests involved in relation to disclosure of a journal's or diary's contents, and a plaintiff is normally on good grounds to object, after in good faith disclosing related entries, to a defendant's request to broadly produce an entire journal. As the Court notes, however, a necessary step in that good faith disclosure is the plaintiff's counsel's review of the journal to comply in good faith with the party's discovery obligations. That necessary step did not occur here.

Discovery cannot be left to the client; the attorney must be heavily and intimately involved. The Federal Rules of Civil Procedure, and particularly rule 11, require the attorney to make representations that cannot be made without the attorney doing the discovery. It is one thing to ask a client to gather all the documents that are responsive to requests; it is a different thing to ask the client to decide what is relevant. Here, the journal was responsive; the client can help determine what is responsive. After the client answers the attorney's request to identify responsive documents, it is the attorney's responsibility to look at the documents and make the final decisions about what is relevant and what is irrelevant.

Accordingly, the Court concludes that the Plaintiffs' objection to the Defendants' discovery requests that are the basis for this Motion to Compel were not "substantially justified." The Court, therefore, will award the Defendants their expenses incurred in bringing the Motion to Compel. The Defendants should prepare an affidavit and schedule detailing the costs they have incurred, including their attorney's fees. They should first consult with the Plaintiffs to see if they are amenable to paying the expenses without the Court's involvement. If the parties cannot reach a resolution, the Defendants may file these documents with the Court, and the

Plaintiffs can articulate why they find a particular portion of the fees and costs to be objectionable.

**IT IS ORDERED** that the School Defendants' Rule 37 Motion to Compel Production of Original Document and Memorandum in Support, filed November 2, 2012 (Doc. 112), is granted. The Court orders the Plaintiffs to produce, to the extent possible, Plaintiff Arianna London's original, entire journal to the Defendants. As a condition precedent to the Plaintiffs' production of the journal, the Court orders the parties to enter a confidentiality agreement, agreeing that the journal will be produced on an attorneys' eyes only basis, and that the Defendants' attorneys will not further disclose the journal's contents, to other than London and Plaintiffs' counsel, without first seeking the Court's order to do so.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Aimee Bevan
O'Friel & Levy, P.C.
Santa Fe, New Mexico

--and--

Megan Cacace
Relman, Dane & Colfax PLLC
Washington, D.C.

--and--

Reed N. Colfax
Relman, Dane & Colfax PLLC
Santa Fe, New Mexico

*Attorneys for the Plaintiffs*

Andrew M. Sanchez, Sr.
Matthew Lee Campbell
Cuddy & McCarthy, LLP
Albuquerque, New Mexico

-- and --

Gerald A. Coppler
Coppler Law Firm, P.C.
Santa Fe, New Mexico

    *Attorneys for Defendants Santa Fe Public Schools*
      *Board of Education, Barbara Gudwin, Glenn Wikle,*
      *Linda Trujillo, Frank Montano, Steven J. Carrillo,*
      *Bobbie J. Gutierrez, Melanie Romero*

Terry R. Guebert
Alisa Wigley-Delara
Christopher J. DeLara
Guebert Bruckner, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant ASI New Mexico, LLC*