## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CANDICE HERRERA, T.H., a minor by
and through her father and guardian
VINCENT HERRERA, ASHLEY HURTADO,
ARIANNA LONDON,

        Plaintiffs,

vs.                                                                              No. CIV 11-0422 JB/KBM

SANTA FE PUBLIC SCHOOLS, SANTA FE
PUBLIC SCHOOLS BOARD OF EDUCATION,
BARBARA GUDWIN, GLENN WIKLE,
LINDA TRUJILLO, FRANK MONTANO,
STEVEN J. CARRILLO, in their official
capacities as members of the Santa Fe Public
Schools Board of Education, BOBBIE J. GUTIERREZ,
in her official capacity as Superintendent of Santa Fe Public
Schools, MELANIE ROMERO, individually and in her
official capacity as Principal of Capital High
School, LESLIE KILMER, in her official capacity
as Principal of Santa Fe High School as a necessary party
for complete relief, and ASI NEW MEXICO, LLC,

        Defendants.

## MEMORANDUM OPINION AND ORDER[1]

    **THIS MATTER** comes before the Court on the Plaintiffs' Motion to Stay Payment of

Expenses Incurred in Connection with Defendants' Motion to Compel, filed November 7, 2013

(Doc. 157)("Motion").  The Court held a hearing on January 31, 2014.  The primary issue is

whether the Court should delay the payment of the expenses that the Court ordered Plaintiff

---

[1]In its Sealed Memorandum Opinion and Order, filed May 23, 2014 (Doc. 218)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO.  See Sealed MOO at 1 n.1.  The Court gave the parties 14 calendar days to provide notice of any proposed redactions.  See Sealed MOO at 1 n.1.  The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions.  Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

Arianna London to pay in its Memorandum Opinion and Order, filed August 19, 2013 (Doc. 148)("Motion to Compel MOO").  The Court will deny the Motion, because the Plaintiffs have presented no sound reason for the delay that they request.

## FACTUAL BACKGROUND

The Court has previously set forth the facts of the case in detail in its Memorandum Opinion and Order, filed June 28, 2013 (Doc. 142)("Summary Judgment MOO") granting the Individual School Defendant Melanie Romero's Motion for Summary Judgment on Count I of the Second Amended Complaint Based Upon Qualified Immunity, filed November 13, 2012 (Doc. 113)("Romero's Summary Judgment Motion").  See Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1194-1204 (D.N.M. 2013)(Browning, J.).  The Court incorporates by reference those facts and summarizes the facts underlying the case as follows:

> On April 16, 2011, Plaintiffs Arianna London, Ashley Hurtado, Candice Herrera and her younger sister, T.H., attended Capital High School's prom at the Santa Fe Convention Center. Before entering the prom, a security officer, an employee of Defendant ASI Security, New Mexico, with whom the Defendant Santa Fe Schools Board of Education had contracted to provide security at school events, searched Herrera, London, Hurtado, and T.H.. The search of Herrera included patting her down, touching her arms, her stomach, cupping and shaking her breasts, and lifting up her skirt to mid-level from the floor to pat down her legs. The Plaintiffs filed this case against the defendants alleging that the pat-down searches violated their civil rights.

Herrera v. Santa Fe Pub. Schs., No. CIV 11-0422 JB/KBM, 2012 WL 6846393, at *1 (D.N.M. Dec. 20, 2012)(Browning, J.).

## PROCEDURAL BACKGROUND

In their Second Amended Complaint, filed September 18, 2012 (Doc. 100), the Plaintiffs allege that the Defendants violated the Fourth Amendment to the Constitution of the United States of America, see Second Amended Complaint ¶¶ 134-137, at 24; that the Defendants

violated the Constitution of the State of New Mexico's analogous prohibition against unreasonable searches and seizures, see Second Amended Complaint ¶¶ 138-148, at 24-26 (citing N.M. Const. Art. 2 § 10); that the Defendants committed battery, see Second Amended Complaint ¶¶ 149-152, at 26; that the Defendants intentionally inflicted emotional distress upon the Plaintiffs, see id. ¶¶ 153-157, at 26-27; and that the Defendants committed prima facie tort, see id. ¶¶ 158-162, at 27.   The Plaintiffs' request for relief asks the jury to "[a]ward compensatory damages in an amount to be determined by the jury that would fully compensate Plaintiffs for the injuries, humiliation, embarrassment, and mental and emotional distress caused by the Defendants alleged herein."   Second Amended Complaint ¶ 163(d), at 28.

The Defendants served upon the Plaintiffs their first discovery requests, which included, among other requests, a request for production of written statements concerning the events of the April 16, 2011, prom, and the day after the prom.   See School Defendants' Rule 37 Motion to Compel Production of Original Document and Morandum [sic] in Support ¶ 1, at 1, filed November 2, 2012 (Doc. 112)("Motion to Compel"); Defendants' First Set of Discovery at 1, Request for Production No. 6, filed November 2, 2012 (Doc. 112-1).   In response, the Plaintiffs, along with objections to the request, produced a journal entry from London's diary, purportedly written the day after the prom, which consisted of four pages.   See Motion to Compel ¶ 2, at 1-2; London's First Production at 1-3, filed November 2, 2012 (Doc. 112-2).

The Defendants' review of the journal entry raised concern that "the undated journal entry, which purports by its terms to have been written on the day after the prom, April 17, 2011, may have been written much later for the primary purpose of supporting the Plaintiffs' claims." Motion to Compel ¶ 7, at 3.   The Defendants therefore requested, first on May 15, 2012, with a follow-up request on May 30, 2012, that the Plaintiffs produce the entire, original journal so that

the Defendants could inspect it.   See Motion to Compel ¶¶ 8-9, at 3; Electronic Mail Transmission from Gerald Coppler to Reed Colfax, Alisa W. DeLara, and Tom Logan at 1, dated May 15, 2012, filed November 2, 2012 (Doc. 112-4).  On June 4, 2012, the Plaintiffs responded that they would not produce the journal, because the remaining pages in the journal "are, of course, deeply personal and private and unrelated to the matters at issue in the case."  Electronic Mail Transmission from Reed Colfax to Gerald Coppler, Alisa W. DeLara, and Tom Logan at 1, dated June 4, 2012, filed November 2, 2012 (Doc. 112-4).  See Motion to Compel ¶ 10, at 4.

The Defendants thereafter served London with a second set of discovery requests, and in Request for Production No. 8, requested that London "produce for inspection, copying and, if necessary, testing the . . .  journal."  Plaintiffs' Response to Defendants' Second Discovery Request for Production No. 8, filed November 2, 2012 (Doc. 112-5).  In response to these second discovery requests, on July 30, 2012, the Plaintiffs produced an additional eight pages from London's journal, and again objected that the journal's unproduced pages were too personal and not related to claims or defenses in the case.  See Motion to Compel ¶ 12, at 4; London's Second Production at 1-8, filed November 2, 2012 (Doc. 112-6).  Because the Defendants disagreed with the Plaintiffs' position that the journal was not discoverable in its entirety, after discussing the matter and discovering that the Plaintiffs would continue to object to the production, the Defendants prepared a Motion to Compel, but resolved not to file it until after deposing London on August 24, 2012.  See Motion to Compel ¶¶ 13-16, at 5.

During London's deposition, she testified that she copied the initial four pages from the journal and provided those copies, but not the entire journal, to her attorney.  See Deposition of Arianna London at 244:22-247:20, taken August 24, 2012, filed November 2, 2012 (Doc. 112-8)("London Depo."));  Motion to Compel ¶ 16(a), at 5.  London testified that she did not at any

time provide her entire journal to her attorney, but rather "ripped them out and gave them to

him." London Depo. at 247:8-12.

In its Summary Judgment MOO, the Court granted summary judgment in Romero's favor

based on qualified immunity. See Summary Judgment MOO at 122. The Court explained:

> [T]he Court finds that Romero requesting that ASI New Mexico guards perform
> pat-down searches of all of the Capital High prom attendees violated the
> Plaintiffs' constitutional rights. The Court concludes, however, that the Plaintiffs'
> right to be free from these suspicionless pat-down searches was not clearly
> established at the time of the prom in April, 2011. Additionally, with respect to
> C. Herrera's § 1983 claim, although there is a genuine issue of fact whether
> Romero saw the ASI New Mexico guard require C. Herrera to lift her dress, and
> expose her bare leg, up above her knee, even if Romero did see that conduct, it
> was not clearly established in April, 2011, that a school search to that extent
> violated C. Herrera's constitutional rights. Accordingly, Romero is entitled to
> qualified immunity and the Court will dismiss the Plaintiffs' § 1983 claims
> against Romero in her individual capacity.

Summary Judgment MOO at 122.

Defendants Santa Fe Public Schools Board of Education, Bobbie J. Gutierrez, Melanie

Romero, and Leslie Kilmer (hereinafter "SFPS Defendants") moved the Court to compel

"London to produce, to the extent possible, the complete bound journal." Motion to Compel at

1.

In its Motion to Compel MOO, the Court granted the Motion to Compel. See Motion to

Compel MOO at 52. The Court ordered

> the Plaintiffs to produce, to the extent possible, . . . London's original, entire
> journal to the Defendants. As a condition precedent to the Plaintiffs' production
> of the journal, the Court orders the parties to enter a confidentiality agreement,
> agreeing that the journal will be produced on an attorneys' eyes only basis, and
> that the Defendants' attorneys will not further disclose the journal's contents, to
> other than London and Plaintiffs' counsel, without first seeking the Court's order
> to do so.

Motion to Compel MOO at 52.   The Court also required the Plaintiffs to pay the costs of preparing the Motion to Compel.   See Motion to Compel MOO at 50-51.

The Plaintiffs move the Court to stay payment of the costs of preparing the Motion to Compel.   See Motion at 1. The Plaintiffs state that,

> [p]ursuant to the Court's direction,[2] the SFPS Defendants prepared an affidavit setting forth the time they claimed to incur in bringing the motion and presented it to Plaintiffs.   Plaintiffs' counsel offered not to challenge any of the time sought, and thereby avoid any additional litigation regarding the reasonableness of the SFPS Defendants' expenses, if the SFPS Defendants would not seek payment of the expenses until the conclusion of the case.   The SFPS Defendants refused Plaintiffs' offer.

Motion at 1.   The Plaintiffs state that the SFPS Defendants' counsel have filed their affidavit, see Attorney Fees Affidavit, filed September 25, 2013 (Doc. 153), asking for $11,075.70 for attorneys' fees.   See Motion at 1.   The Plaintiffs assert:

> Three separate sets of facts support staying payment of the SFPS Defendants' motion to compel expenses until the conclusion of the case.   First, the Court has made findings that establish that Plaintiffs will be deemed prevailing parties on the issue of SFPS' liability for some of Plaintiffs' claims, which will shift fees to Plaintiffs under 42 U.S.C. § 1988 at the conclusion of the case.   As a result, the SFPS Defendants will owe Plaintiffs more in fees and costs than the reasonable amount expended litigating the SFPS' motion to compel. Second, a comparison of the economic positions of Plaintiff London, who is a recent high school graduate, and SFPS, whose insurance is paying defense costs,

---

[2] In the Motion to Compel MOO, the Court stated:

> The Defendants should prepare an affidavit and schedule detailing the costs they have incurred, including their attorney's fees.   They should first consult with the Plaintiffs to see if they are amenable to paying the expenses without the Court's involvement.   If the parties cannot reach a resolution, the Defendants may file these documents with the Court, and the Plaintiffs can articulate why they find a particular portion of the fees and costs to be objectionable.

Motion to Compel MOO at 51-52.

demonstrates that equity does not call for an immediate repayment of SFPS'
expenses. Third, the question of whether Ms. London's diary should be produced
was a close one, which diminishes any purpose that could be served by requiring
immediate payment of the motion to compel expenses.

Motion at 2.  According to the Plaintiffs, the Court's ruling, that "the direction to conduct pat-

downs on every student as a condition of entry to the prom violated Plaintiffs' rights . . . [,] is

sufficient to find in Plaintiffs' favor on their claim that SFPS violated" their civil rights, and that

they may recover attorneys' fees under 42 U.S.C. § 1988.  Motion at 2.  The Plaintiffs assert that

it is too early to decide the amount of fees and costs that they will recover, but assert that "that

amount will undoubtedly exceed the amount that [the] SFPS [Defendants] reasonably incurred in

connection with the motion to compel Ms. London's diary."  Motion at 3.  The Plaintiffs contend

that efficiency and equity suggest that the expenses related to the Motion to Compel should be

calculated as an offset to the attorney's fee award at the case's close.  See Motion at 3.

The Plaintiffs also assert that, because London is a recent high school graduate with an

entry-level job who is taking college classes, and the SFPS Defendants are insured, the parties'

financial conditions differ.  See Motion at 3-4.   According to the Plaintiffs, the difference

"strongly favors delaying payment of the motion to compel expenses until the conclusion of the

case" and "having SFPS bear the burden of not being reimbursed for those costs until the

conclusion of the case, just as Ms. London and her counsel bear the burden of not being

reimbursed for the substantial amount of other fees and costs until the end of the litigation."

Motion at 4.  The Plaintiffs state that their counsel have expended significant resources in

litigating this case, and that, given that the SFPS Defendants have greater assets than the

Plaintiffs do, the SFPS Defendants should wait until the case's close before they are reimbursed.

See Motion at 4.

According to the Plaintiffs, the question whether to produce her journal was a close one, and their initial decision not to produce it did not egregiously violate discovery rules.  "Instead," the Plaintiffs contend, their "decision was a close call and that further supports a finding that the payment of expenses related to the production of the diary are fairly deferred until the conclusion of the case."  Motion at 5.

In the Santa Fe Public Schools' Response to Plaintiff's [sic] Motion to Stay Payment of Expenses Incurred in connection with Defendants' Motion to Compel, filed December 4, 2013 (Doc. 158)("Response"), the SFPS Defendants contest the Plaintiffs' "implied representation . . . that the amount of costs and fees to which SFPS is entitled has not been established in SFPS's Attorney Fees Affidavit . . . and, moreover, that Plaintiff's [sic] counsel has not agreed to accept that amount as the fees and costs owed to SFPS."  Response at 2.  The SFPS Defendants list the following facts:

1.      On August 30, 2013, Defendant's counsel (Coppler) emailed to Plaintiff's counsel (Colfax) an unexecuted Attorney Fees Affidavit documenting costs and fees arising from the litigation of SFPS's motion to compel the production of Arianna London's complete journal in the amount of $10,237.50 plus $838.20 for gross receipts tax, for a total of $11,075.70. The email also invited negotiation.  *August 30, 2013 email from Coppler to Colfax is contained in Email String 8-30-2013 through 9-12-2013*[, filed December 4, 2013 (Doc. 158-1)].  Plaintiff's counsel did not respond.

2.      On September 12, 2013, Defendant's counsel re-sent the unexecuted affidavit by email to Plaintiff's counsel and asked for his position. *September 12, 2013 email from Coppler to Colfax is contained in Email String 8-30-2013 through 9-12-2013* . . . . On the same day, Plaintiff's counsel responded by email.  He did not offer a position but stated, "I wanted to have a conversation with you about it."  *September 12, 2013 email from Colfax to Coppler is contained in Email String 8-30-2013 through 9-12-2013*[, filed November 7, 2013 (Doc. 158-2)].

3.      On or soon after September 12, 2013, Defendant's counsel and counsel for Plaintiff discussed the Court's Order and the Attorney Fees Affidavit

- 8 -

by telephone, which conversation is documented and clarified in the emails that followed between the attorneys.

4.      On September 20, 2013, Defendant's counsel emailed counsel for Plaintiff stating, in part:

> Per our discussion last week, as I understand your position, you don't take issue with our fees, but have requested that payment of the fees be deferred until the end of the case.

The email further conveyed that Defendant was unwilling to agree to wait for payment until the end of the case. *September 20, 2013 email from Coppler to Colfax is contained in Email String 9-20-2013 into 9-25-2013* . . . .

5.      When Defendant's counsel received no response to the September 20, 2013 email, he again emailed counsel for Plaintiff on September 24, 2013 asking:

> As I haven't heard back from you on this, I assume I should just file a motion so you can argue to Judge Browning for deferment of the fees and costs?

*September 24, 2013 email from Coppler to Colfax is contained in Email String 9-20-2013 into 9-25-2013* . . . .

6.      On September 25, 2013, counsel for Plaintiffs responded by email:

> Rather than have you spend more time on filing a motion seeking a specific amount of fees/costs, I was planning on just going straight to our filing a motion to defer the payment.  Do you have any opposition to that procedure?

This [sic] *September 25, 2013 email from Colfax to Coppler is contained in Email String 9-20-2013 into 9-25-2013* . . . .

7.      Defendant's counsel responded to Plaintiff's counsel that same day (09/25/2013) stating, in part:

> I believe you are saying you don't take issue with the fee/cost amount ($11,075.70) set forth in my affidavit previously emailed

to you on August 30, 2013.  If my understanding is correct, I don't object to the procedure you have proposed.

That email also explicitly stated that Plaintiff's proposed motion to delay payment would be opposed and asked whether SFPS should file its Attorney Fees Affidavit [Doc. 153] before Plaintiff's proposed motion was filed.  This [sic] *September 25, 2013 email from Coppler to Colfax is contained in Email String 9-20-2013 into 9-25-2013 . . . .*

8.      Plaintiff's counsel responded to Defendants counsel's email of September 25, 2013 on the same day stating, in its entirety (emphasis added):

So that our position is clear: I do not necessarily agree that the amount of time you all spent on drafting the motion and reply was necessary, but **in the interest of moving past this issue and not expending even more time litigating what was reasonable, I am willing to accept the amount you set forth in the affidavit and have the judge direct when it should be paid.**

This [sic] *September 25, 2013 email from Colfax to Coppler is contained in Email String 9-20-2013 into 9-25-2013 . . . .*

9.      The Defendant's counsel responded, still on September 25, 2013 . . . :

Okay.  I will file the affidavit and understand that you will file an opposed motion to defer payment to which we will file a response.

This [sic] *September 25, 2013 email from Coppler to Colfax is contained in Email String 9-20-2013 into 9-25-2013 . . . .*  Later that day counsel for Defendant informed Plaintiff's counsel that the Attorney Fee Affidavit had been filed with the Court and provided an electronic copy of the document that was filed as Document 153.  This [sic] *September 25, 2013 email from Coppler to Colfax begins Email String 9-25-2013 through 11-06-2013 . . . .*

10.      In the last communication between the attorneys on September 25, 2013, Plaintiff's counsel responded to the email referenced in the paragraph immediately above stating:

"Thanks. We will get the motion regarding deferring payment filed within a few days."

This [sic] *September 25, 2013 email from Colfax to Coppler is contained in Email String 9-25-2013(2) through 11-06-2013, attached hereto as Exhibit 3.*

11.     Finally, on November 07, 2013, after prodding emails by the Defendant's counsel on October 16, 2013 and November 6, 2013, Plaintiff filed the motion presently before the Court [Doc. 157].   *October 16, 2013 and November 6, 2013 emails from Coppler to Colfax contained in Email String 9-25-2013(2) through 11-06-2013 . . . .*

The assertion in Plaintiff's Motion that Plaintiff's counsel merely offered to refrain from challenging the Attorney Fee Affidavit if Defendant did not challenge the relief sought in Plaintiff's Motion and that SFPS refused the offer is not correct.  As shown by the written communications between the attorneys for Plaintiff and Defendant on this issue, that representation is not supported by the actual communications. SFPS asks the Court to enforce the agreement between counsel and find that SFPS is entitled to $11,075.70 (including GRT) as documented in SFPS's Attorney Fees Affidavit, filed on September 29, 2013 [Doc. 153].  If anything, that amount should be increased for SFPS having to include this Subsection A in this Response.

Response at 2-5 (emphasis in original).

The SFPS Defendants assert that the Plaintiffs' arguments do not support their position that the Court should delay payment until the end of litigation.  See Response at 6.  The SFPS Defendants contend that the Plaintiffs have consistently contended that "a substantial recovery for Plaintiffs was effectively guaranteed," and argue that, "[i]f that is true, . . . the substantial award will primarily be in attorney fees and not damages awards to the Plaintiffs," because the Plaintiffs are not likely to prove significant damages based on personal injuries.  Response at 5.  Further, the SFPS Defendants argue, while acknowledging the Court's prior rulings that the pat-down searches at issue would violate the Fourth Amendment, that "there is no judgment establishing liability against any defendant -- not even the nominal damage award clearly taken

for granted at this time by Plaintiffs.  There is no existing or guaranteed stack of money against which Plaintiff can charge this sanction -- only an expectation."  Response at 5.  The SFPS Defendants also state that there is no equitable basis for the Plaintiffs' position, because the award that the Plaintiffs expect is statutory, whereas the award that the Court has ordered the Plaintiffs to pay "is a sanction for flaunting the Rules of Civil Procedure and an attorney's duty to inform and lead their clients in complying with those rules."  Response at 6-7.  In other words, the SFPS Defendants assert that the "Plaintiffs' expectation of an ultimate award of §[]1983 attorney fees is not akin to a bank account against which an award of expenses as a sanction ordered now can be charged in some kind of running tally."  Response at 7.

The SFPS Defendants also state that they do not wish to collect the fees and costs at issue from London, but from her counsel.  See Response at 7.  They explain that:

> SFPS has never argued and does not believe the Court found that Plaintiff Arianna London defaced her journal in a conscious attempt to defeat the administration of justice in this matter.  To the contrary, SFPS argued and believes the Court found that her diary was defaced and wrongfully withheld from discovery as a result of her counsel's failure to inform Ms. London regarding the preservation and production of documents under the Federal Rules of Civil Procedure.  SFPS argued and believes the Court found that Plaintiff's counsel did not look at the journal to determine whether it should be produced in his professional legal opinion, but instead left it in the hands of his teen-aged client to make that legal determination.

Response at 7.  Further, the SFPS Defendants point to the Court's conclusion that "the Plaintiffs' objection to the Defendants' discovery requests that are the basis for this Motion to Compel were not 'substantially justified,'" Motion to Compel MOO at 51 (quoting Fed. R. Civ. P. 36(a)(5)(A)(ii)), and state that lawyers make objections and not clients do not, see Response at 7-8.  The SFPS Defendants recognize that London probably could not pay the expenses, and state some confusion with why her counsel contends that she would have to pay for it personally.  See

Response at 8.  Moreover, they note that, although the Motion explains why London would have difficulty paying for those expenses, it does not explain why her attorneys could not pay for those expenses.  See Response at 8.

The SFPS Defendants also disagree with the Plaintiffs' contention that the Court found that the decision whether to produce the diary was a close call.  See Response at 8.  They point out that the Court found that the Plaintiffs' objections to producing it were not "substantially justified."   Response at 8; Motion to Compel MOO at 51 (quoting Fed. R. Civ. P. 36(a)(5)(A)(ii)).  Accordingly, the SFPS Defendants ask the Court to deny the Motion.  See Response at 8.

In the Plaintiffs' Reply in Support of Motion to Stay Payment of Expenses, filed December 24, 2013 (Doc. 162)("Reply"), the Plaintiffs submit that the issue whether the Attorney Fee Affidavit establishes the amount of fees and costs, which consumed the Response, is irrelevant.  Reply at 1.  The Plaintiffs contend that they are only seeking to delay payment and do not ask the Court to evaluate the Attorney Fee Affidavit's calculation of fees.  See Reply at 1. The Plaintiffs assert that their statement of the facts was correct:

> SFPS refused Plaintiffs' offer not to contest the amount of fees and costs if SFPS agreed that the fees and costs would be paid at the conclusion of the case. SFPS has incorrectly interpreted this statement as meaning that Plaintiffs assert that they are now challenging the amount of the fees and costs.  That is an erroneous interpretation. Plaintiffs noted SFPS's refusal to Plaintiffs' reasonable suggestion to delay payment of the fees and costs as a relevant aspect of the chronology of communications between the parties on this issue and SFPS's responsibility for requiring further litigation on this matter.  Plaintiffs had hoped that their proposed course of action would eliminate the need for further briefing and expenditure of resources on this issue, but unfortunately, SFPS has chosen to contest the timing of the payment and the issue lingers.

Reply at 1.

- 13 -

The Plaintiffs also recast their argument about the case's merits, stating that they have only argued that,

> if the Court examines the effect of the legal findings the Court has made in the case to date, the relative economic positions of the parties, and the reasons for awarding the fees and costs, it will be impelled to find that the equities favor delaying payment of the fees and costs.

Reply at 2.  According to the Plaintiffs, the SFPS Defendants have not contested their view that the Court's findings support a finding of liability, and, although the Court has not entered judgment against the SFPS Defendants, the SFPS Defendants "ha[ve] pointed to no factual or legal issue related to SFPS's liability that remains unresolved."  Reply at 2.  The Plaintiffs submit that, once the Court enters that judgment, "it is a virtual certainty that the eventual amounts" of damages, fees, and costs to which the Plaintiffs will be entitled "will far exceed the amount SFPS seeks in fees and costs related to the motion to compel briefing."  Reply at 2-3. The Plaintiffs submit: "Accordingly, any payment made by Plaintiffs to SFPS now will be paid back to Plaintiffs at the conclusion of the case."  Reply at 3.

The Plaintiffs reiterate their argument that the parties' relative economic positions should influence the timing of the payment.  See Reply at 3.  They assert that the SFPS Defendants' argument that the Court awarded fees against the Plaintiffs' counsel and not against the Plaintiff is incorrect, and that there is no reason to presume that the Court did so.  See Reply at 3.  The Plaintiffs contend that, "[w]hen such an award is directly made against counsel it is typically done so explicitly."  Reply at 3 (citing Devaney v. Cont'l Am. Ins. Co., 989 F.2d 1154 (11th Cir. 1993)).  Moreover, the Plaintiffs underscore that the SFPS Defendants "specifically raised the question of who should be responsible for paying any awarded fees and costs in its briefing . . . , yet the Court did not specifically direct that counsel should pay the fees and costs."  Reply at 4. Moreover, the Plaintiffs' counsel asserts that he

> has already fronted approximately $30,000 in costs and has expended approximately 1,000 hours of attorney and paralegal time.  While Plaintiffs' counsel will ultimately be reimbursed for those costs and some portion of that time when Plaintiffs are formally adjudicated as prevailing parties, Plaintiffs' counsel will more than likely have to wait until final resolution of the case before receiving that reimbursement.  On the other hand, counsel for Defendants are paid as they incur time and expenses and SFPS itself does not reimburse any fees or expenses because its insurance is paying the costs of defense.

Reply at 4.  The Plaintiffs also argue that the SFPS Defendants' argument that the Plaintiffs' counsel -- and not London -- should pay the sanctions that the Court ordered conflicts with its contention that any award that the Plaintiffs receive will consist principally of attorney's fees and not of damages:  "If the motion to compel fees and costs were awarded against Plaintiffs' counsel, then Plaintiffs' entitlement to attorneys' fees and costs is more relevant than their entitlement to a certain compensatory damages award."  Reply at 4.

The Plaintiffs also reiterate their view that the question at issue in the Motion to Compel was close:

> The Court held that the withholding of the diary pages that were unrelated to the events at issue was not substantially justified because counsel for the Plaintiffs did not review them.  It appears to Plaintiffs' counsel's review of the Court's more than fifty-page order that the question was a close one.  It is also worth noting that SFPS does not suggest, now that it has possession of the diary, that any pages were improperly withheld.  The Court, of course, is in the best position to assess the closeness of the question and how that fact affects the resolution of the timing of payment of the motion to compel fees and costs.

Reply at 4.

The Court held a hearing on January 31, 2014.  See Transcript of Hearing, taken January 31, 2014 ("Tr.").[3]  The Court began by explaining its reaction to the Plaintiffs' arguments.  See

---

[3]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

- 15 -

Tr. at 2:12-14 (Court).  In its view, it is premature to assert that the Court's findings "ha[ve] established that the plaintiffs will have an eventual award in this case.  That may very well be the case.  But I think it's a little too early to say that."  Tr. at 2:14-20 (Court).  The Court also stated that it probably would defeat the purpose of rule 37 of the Federal Rules of Civil Procedure -- which is to immediately deter discovery violations and compensate their victims within the case -- to delay shifting costs to the end of the case.  See Tr. at 2:20-25 (Court).  The Court stated that it had never before entertained such a request, noted that the parties did not cite any cases on whether a court can or should defer payment, and stated that, although parties sometimes agree to wait until a case concludes before collecting such awards, it was not sure that the Court should defer payment if the parties do not otherwise agree.  See Tr. at 2:25-13 (Court).  The Court stated that it had considered the parties' relative financial positions, but doubted that it would be fair to defer payment for that reason.  See Tr. at 3:14-17 (Court).  Although the Court stated that it had not given this issue much thought, the Court clarified that, in case a party were to argue that the Court should reconsider its assignment of costs in the Motion to Compel MOO, it had awarded the costs against the Plaintiffs and not against the Plaintiffs' counsel.  See Tr. at 3:17-22 (Court).  The Court also stated that the closeness of the question did not favor delaying payment: it noted that, because it had decided the Plaintiffs' position was not substantially justified, it would be difficult for it now to state that it was a close question that justifies deferring its fee award.  See Tr. at 3:22-4:4 (Court).  The Court stated that it was, therefore, inclined to deny the Motion, but invited the Plaintiffs to speak.  See Tr. at 4:4-6 (Court).

The Plaintiffs substantially reiterated their arguments from the Motion and the Reply. They argued that, although there is no judgment in their favor, the Court's findings brought the parties "very, very close" to a finding of liability against the school. Tr. at 4:4:8-21 (Colfax).

They stated that the parties' financial positions significantly differ, and London cannot afford to pay the bill. <u>See</u> Tr. at 4:21-5:3 (Colfax).  The Plaintiffs contended that the amount would "presumably" be "made up at the end of the case, given how close she is to having a liability finding in her favor," Tr. at 5:3-5 (Colfax), so paying now would only shift money between the parties for a few months; accordingly, in their view, it is not worth putting that burden on London, <u>see</u> Tr. at 7-12 (Colfax).  The Plaintiffs also stated that the Motion correctly laid out the facts, and that they were "simply . . . attempt[ing] to try to get this issue passed and be done with it, instead of . . . continuing to litigate it." Tr. at 14-22 (Colfax).

The SFPS Defendants asserted that their Motion to Compel was directed towards counsel and not towards London.  <u>See</u> Tr. at 6:4-12 (Logan).  After a brief colloquy, the SFPS Defendants agreed that the Court had not issued its order against the attorneys, but against the Plaintiffs.  <u>See</u> Tr. at 6:13-7:11 (Court, Logan).  The Court asked how that disposition affected the Motion; the SFPS Defendants asserted that they were entitled to the sanction.  <u>See</u> Tr. at 7:13-18 (Court, Logan).  The SFPS Defendants added that the Court had correctly stated that there has been no final decision on the facts, that the School District has not been heard since the hearing on May 19, 2011, regarding the Plaintiff Candice Herrera's Motion for Temporary Restraining Order, filed May 17, 2011 (Doc. 2), and that only "the principal" had moved for summary judgment on the basis of qualified immunity so liability had not been established, Tr. at 7:18-8:1 (Logan).[4]

---

[4] The Plaintiffs were referring to Romero's Summary Judgment Motion, which the Court granted in its Summary Judgment MOO.

After a brief discussion on a scheduling matter, see Tr. at 8:3-21 (Court, Logan, Colfax), and after Defendant ASI New Mexico, LLC declined to take a position on the Motion, see Tr. at 8:21-24 (Court, Tucker), the Court stated that it would deny the Motion, explaining:

> [I]f the school defendants feel . . . that I was wrong in assessing the cost against or the expenses against the plaintiffs rather than the against the counsel, then they can ask me to reconsider that. . . . I'm not sure that I've ever singled out the counsel[. T]ypically when I enter one of these discovery orders it's usually just against the parties. So I'm not sure I'm familiar enough today to probably make a determination. You know it may have been in the briefing. I'll make it against attorneys or something but I'll typically enter the order against the plaintiff[, which] sort of takes care of it. I think that's the first time that that has not been sufficient to resolve it, so I'll leave it to the defendants[:] if they feel like they need this order modified, then I probably need to consider . . . in a rather concrete way that body of law and what findings I have to make or need to make to assess it against the attorneys. But as far as this motion today, I'll deny this motion.

Tr. at 9:2-23 (Court).

## <u>ANALYSIS</u>

For substantially the reasons stated on the record, the Court will deny the Motion. The Plaintiffs have cited no authority for the proposition that the Court could delay the shifting of costs until the case closes. Moreover, the Plaintiffs have not presented a sound reason for the delay that they request.

As a general matter, it would undercut rule 37's purpose to delay the award of expenses in light of the Plaintiffs' expectation that they will recover. It is premature for the Plaintiffs to assume that they will be victorious. It would be inappropriate for the Court to treat its award of costs as an offset against a potential award of liability about which the Court and the parties can only speculate.

The Court has ruled only as to Romero, and even when it found a constitutional violation, it found that the law was not clearly established, and, thus, awarded no recovery. Section 1983

- 18 -

liability is treacherous for plaintiffs; securing a judgment is far from certain, particularly where the case does not appear to have substantial damages.  Moreover, if the Court started timing the award of expenses around whether the sanctioned party sincerely believed that it would win the case, nearly every sanctioned party in every case would argue that it should not have to pay until after the Court adjudicates the case's merits.  The expenses that London must pay and her case's merits are distinct issues, and there is no sound reason to tie them together.  Indeed, they should be kept separate; one focuses on maintaining a fair process for both parties, while the merits stage focuses on who should win.

Rule 37 sanctions are not like a running bar tab.  If no one ever really pays a sanction, because it will all come out as a wash at the end, sanctions will not mean anything; parties will go about their daily business as usual, without any consequences.  Sanctions are not meant to be ignored; they are meant to deter and modify conduct in the case, immediately.  If delayed, as the Plaintiffs propose, sanctions will lose the teeth that the Advisory Committee intended them to have.  As any parent or pet owner knows, punishment best deters bad behavior when it is imposed swiftly after the bad behavior.  The same principle applies to sanctions that judges impose.  The Court wants, when it goes to time and effort to sanction a party, the sanctions imposed to have effect.

The Court also concludes that neither London's financial state nor her counsel's displeasure at having to potentially front more of her costs provides a sound reason to delay the cost.  The Court acknowledges that paying these expenses will probably be a significant burden for London and that London may not have the assets to pay seems undisputed.  Rule 37 motions exist, however, to exact costs from parties who engage in discovery misconduct -- with the goal of deterring discovery misconduct as the case progresses.  See 8B Charles A. Wright, Arthur R.

Miller, & Richard L. Marcus, Federal Practice and Procedure § 2288, at 514 (3d ed. 2010)(stating that a goal of an award of expenses under rule 37 is "to reduce the burden on the courts by deterring parties from making unjustified motions for discovery and by deterring their opponents from resisting discovery without justification").  While the Plaintiffs talk about how close the issue was, the Court is not convinced it was so close.  Attorneys that leave discovery to the discretion of the client, particularly a teenage client, run a serious risk of not meeting their rule 11 discovery obligations.  That London may lack the resources to pay does not change the Court's conclusion that her objection to producing the diary was not "substantially justified."

While the Defendants apparently tossed in a request for the fees to be assessed against the Plaintiffs' attorneys, it was not a major thrust of its argument.  The Court typically enters an award against the plaintiff or the defendant; it does not usually sanction the attorneys.  Here, the Court certainly faults the attorneys, but London does not appear to help matters with her actions.  The Court did not see a sound reason to deviate from that usual rule and, on the limited arguments made to date, still does not see a good reason to shift costs to the attorneys.  If, however, the SFPS Defendants believe that the Court should reconsider the portion of its Motion to Compel MOO that awarded the costs against London and not against her attorneys, they may so move, explaining in a more robust way why the award should be against the attorneys.  The Court would need more extensive briefing on that issue.

The wish of London's counsel to avoid paying the expenses as a cost of litigation fares no better.  The reality of § 1983 litigation is that lawyers often have to manage their clients' expenses in that fashion.  The Court will not adjust its cost assessment to account for the fact that London's counsel finds their compensation arrangement burdensome.

**IT IS ORDERED** that the Plaintiffs' Motion to Stay Payment of Expenses Incurred in Connection with Defendants' Motion to Compel, filed November 7, 2013 (Doc. 157), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Aimee Bevan
Friel & Levy, P.C.
Santa Fe, New Mexico

--and--

Megan Cacace
Relman, Dane & Colfax PLLC
Washington, D.C.

--and--

Reed N. Colfax
Relman, Dane & Colfax PLLC
Santa Fe, New Mexico

     *Attorneys for the Plaintiffs*

Andrew M. Sanchez, Sr.
Matthew Lee Campbell
Cuddy & McCarthy, LLP
Albuquerque, New Mexico

-- and --

- 21 -

Gerald A. Coppler
Thomas R. Logan
Coppler Law Firm, P.C.
Santa Fe, New Mexico

     *Attorneys for Defendants Santa Fe Public Schools*
        *Board of Education, Barbara Gudwin, Glenn Wikle,*
        *Linda Trujillo, Frank Montano, Steven J. Carrillo,*
        *Bobbie J. Gutierrez, and Melanie Romero*

Robert Conklin
Robin A. Goble
Matthew Thomas Tucker
Conklin, Woodcock & Zeigler, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant ASI New Mexico, LLC*