## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CANDICE HERRERA, T.H., a minor by
and through her father and guardian
VINCENT HERRERA, ASHLEY HURTADO,
ARIANNA LONDON, and all others similarly
situated,

        Plaintiffs,

vs.                                           No. CIV 11-0422 JB/KBM

SANTA FE PUBLIC SCHOOLS, SANTA FE
PUBLIC SCHOOLS BOARD OF EDUCATION,
BARBARA GUDWIN, GLENN WIKLE,
LINDA TRUJILLO, FRANK MONTANO,
STEVEN J. CARRILLO, in their official
capacities as members of the Santa Fe Public
Schools Board of Education, BOBBIE J. GUTIERREZ,
in her official capacity as Superintendent of Santa Fe Public
Schools, MELANIE ROMERO, individually and in her
official capacity as Principal of Capital High
School, ROBERT STEPHENS, in his official capacity
as Principal of Santa Fe High School as a necessary party
for complete relief, and ASI NEW MEXICO, LLC,
JOHN/JANE DOE Nos. 1-8,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER[1]</u>

    **THIS MATTER** comes before the Court on the Plaintiffs' Motion for Entry of Protective

Order, filed January 3, 2014 (Doc. 163)("Motion").  The Court held a hearing on January 31,

2014.  The primary issue is whether the Court will enter a confidentiality order to govern

---

[1]In its Sealed Memorandum Opinion and Order, filed May 23, 2014 (Doc. 216)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO.  <u>See</u> Sealed MOO at 1 n.1.  The Court gave the parties 14 calendar days to provide notice of any proposed redactions.  <u>See</u> Sealed MOO at 1 n.1.  The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions.  Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

disclosure of sensitive personal information about the Plaintiffs.  Pursuant to an agreement that the parties reached at the hearing, Court will grant the Motion in part and deny it in part.

## FACTUAL BACKGROUND

The Court has previously set forth the facts of the case in detail in its Memorandum Opinion and Order, filed June 28, 2013 (Doc. 142)("Summary Judgment MOO"), granting the Individual School Defendant Melanie Romero's Motion for Summary Judgment on Count I of the Second Amended Complaint Based Upon Qualified Immunity, filed Nov. 13, 2012 (Doc. 113)("Romero's Summary Judgment Motion").  See Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1194-1204 (D.N.M. 2013)(Browning, J.).  The Court incorporates by reference those facts and summarizes the facts underlying the case as follows:

> On April 16, 2011, Plaintiffs Arianna London, Ashley Hurtado, Candice Herrera and her younger sister, T.H., attended Capital High School's prom at the Santa Fe Convention Center. Before entering the prom, a security officer, an employee of Defendant ASI Security, New Mexico, with whom the Defendant Santa Fe Schools Board of Education had contracted to provide security at school events, searched Herrera, London, Hurtado, and T.H.. The search of Herrera included patting her down, touching her arms, her stomach, cupping and shaking her breasts, and lifting up her skirt to mid-level from the floor to pat down her legs. The Plaintiffs filed this case against the defendants alleging that the pat-down searches violated their civil rights.

Herrera v. Santa Fe Pub. Sch., No. CIV 11-0422 JB/KBM, 2012 WL 6846393, at *1 (D.N.M. Dec. 20, 2012)(Browning, J.).  London, along with the other Plaintiffs, seeks damages for emotional distress.  See Second Amended Complaint ¶ 129, at 23, filed September 18, 2012 (Doc. 100).

## PROCEDURAL BACKGROUND

In its Memorandum Opinion and Order, filed August 19, 2013 (Doc. 148)("Motion to Compel MOO"), the Court ordered Plaintiff Arianna London to produce her complete bound journal, explaining:

The Defendants have made a sufficient showing that, because the circumstances around the journal entries and the way in which the Plaintiffs produced the journal entries in response to the Defendants" discovery requests, the Plaintiffs" production of London's original bound journal in its entirety may lead to evidence that the produced pages are not authentic, thus impeaching London's and the Plaintiffs' credibility. Because investigation of the Defendants' concern requires that the Defendants be permitted to view, to the extent possible, the entire, original journal, the Court will grant the Defendants' request to produce, to the extent possible,  London's complete bound journal. Second, because London, and not her attorneys, made the decision as to which pages in her journal were responsive to the Defendants' discovery requests and discoverable, the Court concludes that the Defendants have made an adequate showing that, especially given London's claim for emotional distress damages, there may be additional relevant and discoverable entries and pages.  Because the Court concludes that it should compel the production of the entire journal on other grounds, the Court need not require the Plaintiffs to further disclose particular pages or entries, and will also not review in camera the journal to make its own determination about additional discoverable material.  Finally, because London made the decision as to which pages were responsive to the Defendants" discovery requests without her attorneys at least viewing the entire journal's contents before representing that any additional, unproduced pages were not relevant to any claims or defenses in the case, the Court find that the Plaintiffs' objection are not substantially justified. The Court will therefore require, under rule 37(a)(5)(A) of the Federal Rules of Civil Procedure, the Plaintiffs to pay the Defendants' reasonable expenses incurred in making the motion, including attorney's fees.

Motion to Compel MOO at 2-3.

The Plaintiffs move the Court to enter a confidentiality order.  <u>See</u> Motion at 1. According to the Plaintiffs, they have disclosed sensitive personal information during the case -- including information generated while they were minors.  <u>See</u> Motion at 1.  They assert that "there is no public interest in the information for which protection is sought and the entry of a protective order will facilitate the efficient administration of this case."  Motion at 1.  After reviewing the familiar standards for protective orders, <u>see</u> Motion at 2 (citing, <u>e.g.</u>, <u>Biax Corp. v. Nvidia Corp.</u>, No. 09-CV-01257-PAB-MEH, 2009 WL 3202367 (D. Colo. Oct. 5, 2009)), the Plaintiffs contend that there is good cause to enter a protective order, <u>see</u> Motion at 2.  The Plaintiffs argue that much information that they produced "implicates privacy interests and could

cause serious embarrassment if released."  Motion at 2 (citing Pearson v. Miller, 211 F.3d 57, 73 (3d Cir. 2000)).  They note that discovery has involved personal, sensitive information, "including facts about Plaintiffs' high school academic records, discipline records, medical issues, and intimate details of Plaintiffs' personal lives," and argue that they "have a legitimate privacy interest in such information and valid concerns regarding the potential embarrassment that would be caused by its unnecessary release."  Motion at 2-3 (citing Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 72-73 (S.D.N.Y. 2010); Gillard v. Boulder Valley Sch. Dist. Re.-2, 196 F.R.D. 382, 386 (D. Colo. 2000)).  The Plaintiffs contend that, because "much of the information relates to time periods when [they] were minors," their privacy interest and the information's sensitivity is heightened.  Motion at 3.

The Plaintiffs also assert that they "do not seek to protect as confidential any information that is important to public health and safety and [that they] are not public entities or officials," which "weighs in favor of entering the proposed Protective Order."  Motion at 3.  They assert that, "[u]nlike in circumstances where public agencies or figures seek to keep important government information confidential, there is no public interest in the confidential information at stake in this case."  Motion at 2-3.  The Plaintiffs also contend that such an order would "promote fairness and efficiency, especially given the substantial amount of redaction that will be required absent such an order."  Motion at 4.  The Plaintiffs suggest that, if the parties disagree whether given information, a proposed protective order "based on model Protective Orders used in various United States District Courts," which they attached to their Motion, "provides for the orderly resolution of such disputes, eliminating unnecessary intervention by the Court."  Motion at 4.  The proposed order  provides that the parties may designate certain documents and deposition testimony as confidential, and will file any briefing that refers to that

document under seal.  See Protective Order at 1-5, filed January 3, 2014 (Doc. 103-1).  If a party disagrees with such a designation, the party may challenge that designation to the Court.  See Protective Order at 5-6.  The proposed order also would require a party that plans to use confidential information at trial must notify the other party, and states that the Court may issue orders that govern the use of that information at trial.  See Protective Order at 6.

In Defendant ASI New Mexico, Inc.'s Response in Opposition to Plaintiff's [sic] Motion for Entry of Protective Order, filed January 13, 2014 (Doc. 165)("ASI New Mexico's Response"), ASI New Mexico argues that the Plaintiffs have not shown good cause that would justify the Court in entering "their proposed order, which is unnecessarily broad in scope and burdensome to defendants."  ASI New Mexico's Response at 1.  It contends that, the facts and procedural history in Biax Corp. v. Nvidia Corp., which the Plaintiffs cited in their background section, differ from the facts and procedure in this case.  See ASI New Mexico's Response at 1. The upshot of ASI New Mexico's argument is that, unlike here, the parties in Biax Corp v. Nvidia Corp. generally concurred that the Court should enter a confidentiality order and agreed on almost all of its terms, differing only about two details.  See ASI New Mexico's Response at 1-2.  They also assert that the protective order in that case "does not approach the expansive scope of the order that Plaintiffs are now requesting," covering only two discrete categories of information, and that the proposed order in this case "is all-inclusive in its definition of the subject information, and appears to target all information which the defendants could use at trial to dispute Plaintiffs' alleged damages."  ASI New Mexico's Response at 2.

ASI New Mexico also asserts that the circumstances in the other cases on which the Plaintiffs rely differ from the facts in this case, because discovery in this case is in an advanced stage, and discovery in those cases were used to incentivize the parties to complete discovery

quickly.  See ASI New Mexico's Response at 2 (citing Gillard v. Boulder Valley Sch. Dist. Re.-2, 196 F.R.D. at 386).  It also notes that the Plaintiffs filed their Motion only twenty-eight days before the January 31, 2014 discovery deadline, and states that the cases that the Plaintiffs cite "involve confidentiality orders that were entered at the start of discovery."  ASI New Mexico's Response at 2.  According to ASI New Mexico, the cases speak of a fear that "'discovery will involve confidential or protected information,'" ASI New Mexico's Response at 3 (quoting Gillard v. Boulder Valley Sch. Dist. Re.-2, 196 F.R.D. at 386 (emphasis added in ASI New Mexico's Response)), and "[n]othing in the authorities relied upon by Plaintiffs suggests that a blanket order may be entered months or years after the 'sensitive' testimony or documents have already been disclosed," ASI New Mexico's Response at 3.  ASI New Mexico suggests that this explains why the Plaintiffs' proposed order does not speak to the "timing of the designation." ASI New Mexico's Response at 3.  ASI New Mexico asserts that the Plaintiffs have not shown good cause why, now that discovery has closed, "a blanket order is more appropriate than an order referring to the specific items of confidential information."  ASI New Mexico's Response at 3.  They assert that, "[a]t this stage, Plaintiffs should have the burden of listing and showing good cause as to the individual documents or items of information which they wish to have protected by a confidentiality order."  ASI New Mexico's Response at 3.

In ASI New Mexico's view, the proposed order is, in actuality, a tactical tool for the Plaintiffs' use that "would allow them to hold hostage key items of evidence for the defense." ASI New Mexico's Response at 4.  ASI quotes the following passage from an electronic mail transmission from the Plaintiffs' counsel: "As I imagined the protective order, it would not affect the stipulation that is in place regarding the diary and would only relate to testimony regarding sensitive subjects that were discussed with the plaintiffs and their families in the depositions."

- 6 -

Electronic Mail Transmission from Reed Colfax to Matt T. Tucker, Gerald Coppler, Robert Conklin, and Erin Houlihan, dated September 26, 2013, filed January 13, 2014 (Doc. 165-1). See ASI New Mexico's Response at 4.  ASI New Mexico asserts that the "Plaintiffs intend to make retroactive use of the order, to mark previously disclosed documents and deposition testimony as confidential."  ASI New Mexico's Response at 4 .  ASI New Mexico states that the proposed order would prejudice the Defendants, because "they would have a number of additional, unwarranted procedural burdens in challenging only newly marked 'confidential' documents which are already part of the record."  ASI New Mexico's Response at 3.   For example, ASI New Mexico asserts:

> To use Plaintiffs' deposition testimony, which Plaintiffs choose to designate as "confidential," as an exhibit in a summary judgment motion, Defendants would have to file such exhibit under seal and not refer to the contents of the testimony in the motion. To use Plaintiffs' deposition testimony at trial, where such testimony has unilaterally been designated as "confidential," Defendants would have to give Plaintiffs five days' advance notice of which particular parts of the transcript they intend to use.  Because of the ease of designating information as confidential under the proposed blanket order and the high burdens placed upon parties that wish to use such information in motions or at trial, there may well be a number of challenges by the Defendants. The potential for challenges and for disagreements between the parties about "confidential" designations under this *post hoc* confidentiality order, makes it much more likely that the order will create the need for the Court's intervention in despites over confidentiality designations, than that it will "promote fairness and efficiency." [Motion at 4.]

ASI New Mexico's Response at 3-4 (citations omitted).  Accordingly, ASI New Mexico asks the Court to deny the Motion.  See ASI New Mexico's Response at 4.

In Santa Fe Public Schools' Response in Opposition to Plaintiffs' Motion for Entry of Protective Order, filed January 17, 2014 (Doc. 167)("SFPS' Response"), after adopting by reference ASI New Mexico's Response, see SFPS' Response at 1, SFPS points out that, although the Plaintiffs' counsel characterize them as children,

three of the Plaintiffs were legal adults when this case was filed and the fourth

was nearly so and has since passed the age of majority.  In addition, they have been counseled by parents and counseled and represented by two law firms, one based in Washington, D.C.  It is wholly their choice to litigate this matter and seek substantial damages from their public school district and educators who, perhaps misinterpreting a complex legal standard, took actions for no purpose other than to protect the Plaintiffs, their classmates and guests.

SFPS' Response at 1-2.  SFPS points out that, in the Second Amended Complaint, the Plaintiffs have sought compensatory and punitive damages for various emotional harms, <u>see</u> SFPS' Response at 2, and argue:

> Unfortunately, when plaintiffs testified at deposition that the pat-down at their prom was one of the most traumatic things they had endured in their life, other bad, traumatic, embarrassing and unfortunate things in their lives become relevant to Plaintiffs credibility in general and especially on the subject of damages.  It certainly gives defendants and their counsel no joy to discover such things, or to be forced to use such evidence in their defense.  Neither defendants nor their counsel have any animosity toward the Plaintiffs or desire to embarrass them.  Moreover, any suggestion that the Defendants would use information gained through discovery in this case for any reason other than litigating this case is baseless and insulting.  However, the defendants do have a right to defend themselves and their counsel have a duty to vigorously develop and make that defense within the limits of the rules of civil procedure and the context of Plaintiffs' allegations.

SFPS' Response at 2-3.

SFPS also contends that the Federal Rules of Civil Procedure do not contemplate the proposed protective order: in its view, the Plaintiffs could have sought protective orders with respect to particular portions of discovery -- for example, depositions or London's diary -- and they did not.  SFPS' Response at 3.  SFPS notes that, in the latter case, the

> Plaintiffs did not seek a protective order but rather took the approach they seek to establish by Court order here -- that they and their counsel would decide what should be disclosed and produced and what they would shelter and withhold because it was "private" and might be embarrassing.  Under that approach, Defendants were forced to involve the Court through a motion to compel Plaintiffs to disclose and produce responsive, discoverable documents

SFPS' Response at 3.  SFPS contends that the law does not support the Plaintiffs' asserted right

to, "in their sole and complete discretion, . . . build a procedural wall around evidence that has already been discovered and that is relevant and admissible in defendant against Plaintiffs' claims." SFPS' Response at 4 (emphasis in original). SFPS states that the Plaintiffs do not truly seek protection from particular discovery requests; instead, as the Motion's late timing illustrates, the Plaintiffs seek "an improper procedural advantage." SFPS' Response at 4. It states that, if the Court were to grant the Motion,

> the sole result would be to shift Plaintiffs' burden, through motions in limine or objections at trial, to convince the Court that particular pieces of evidence should be excluded from the trial under the rules, to a duty (not found in the rules of civil procedure or evidence) that defendants must argue for the admissibility of each piece of evidence shielded merely by the discretion of Plaintiffs. While Plaintiffs argue that their "Protective Order" would further justice and efficiency based merely upon judicial statements concerning far different circumstances, the obvious result in this case would be exactly the opposite. It would vastly increase the time and expense necessary to litigate this matter to a conclusion and would seriously prejudice the Defendants' presentation of their case.

SFPS' Response at 4. Accordingly, SFPS asks the Court to deny the motion, "because it is not supported by good cause, is without precedent or merit, and because it appears to be nothing more than a procedural gambit intended to prejudice Defendants' abilities to defend against Plaintiffs' claims." Response at 4.

In the Plaintiffs' Reply in Support of Motion for Entry of Protective Order, filed January 27, 2014 (Doc. 172)("Reply"), the Plaintiffs assert that the "Defendants' oppositions to Plaintiffs' proposed protective order are based on a fundamental misunderstanding of the operation and purpose of the order Plaintiffs seek." Reply at 1. They deny that the protective order is a "'procedural gambit,'" Reply at 1 (quoting SFPS Response at 4), or a "'tactical tool,'" Reply at 1 (quoting ASI New Mexico's Response at 3), and contend that "there is nothing unusual or suspect about the proposed protective order," Reply at 1. The Plaintiffs note that protective orders like the one that they seek "are so common that many district courts maintain

models that can be readily downloaded from their websites by any litigant.  Plaintiffs' proposed protective order is based on models from the Northern District of Illinois and the Northern District of Ohio."  Reply at 1.

The Plaintiffs underscore that their intent is not, as SFPS alleges, to withhold information, but is only "to help ensure the confidentiality of sensitive and personal documents or information produced by the parties during discovery" -- a procedure which the Plaintiffs contend is "routine."  Reply at 2 (citing Gillard v. Boulder Valley Sch. Dist. Re.-2, 196 F.R.D. at 386).  The Plaintiffs clarify that the parties could still use information that they would designate as confidential "for all appropriate purposes in the litigation," but they may not publicly disseminate that information.  Reply at 2.  The Plaintiffs assert that SFPS' argument that the Plaintiffs could use motions in limine or objections at trial "misses the point of the proposed protective order, which has nothing to do with establishing the admissibility of any evidence."  Reply at 2.  The Plaintiffs contend that, considering the proposed protective order "under its actual terms rather than SFPS' erroneous interpretation of it, there is no basis for SFPS' assertion that the protective order will 'seriously prejudice the Defendants' presentation of their case.'"  Reply at 2-3 (quoting SFPS' Response at 4).  The Plaintiffs also reject SFPS' argument that they are adults choosing to litigate a matter regarding emotional damages, because, even though "the Plaintiffs are now adults and have elected to bring suit because Defendants violated their constitutional rights[, that] does not eliminate their privacy interests."  Reply at 3.  The Plaintiffs note that, if SFPS' theory prevails, almost all plaintiffs could not seek a protective order, "because, by definition, they would have 'chosen to litigate' the matter and plaintiffs are most typically adult."  Reply at 3.  The Plaintiffs note that they, as young women with school and medical records and information seeking to protect private information, have a protected privacy

interest in their information.  See Reply at 3 (quoting Planned Parenthood of S. Ariz. v. Lawall, 307 F.3d 783, 789 (9th Cir. 2002), as "recognizing 'a young woman's privacy interest in avoiding disclosure of sensitive personal information'").

The Plaintiffs also assert that ASI New Mexico's Response "is based solely on the assertions that (1) two of the cases cited by Plaintiffs are distinguishable and (2) there is no purpose in entering a protective order near the close of discovery.  Neither argument is a basis for denying the requested protective order."  Reply at 3.  First, the Plaintiffs contend that ASI New Mexico's extended attempt to distinguish Biax Corp. v. Nvidia Corp. is largely beside the point, because the Plaintiffs cited it "just once and solely for the incontrovertible assertion that courts regularly grant 'protective orders that allow a party, in good faith, to designate confidential information, and then establish a uniform procedure for disputes over such designations.'"  Reply at 3 (quoting Motion at 2).  The Plaintiffs contend that they did not argue that the protective order in that case mirrors the one that they seek, but instead contend that ASI New Mexico has not successfully distinguished Biax Corp. v. Nvidia Corp.  Reply at 3-4.  The Plaintiffs first explain that it is not necessary for the parties to agree that a protective order should be entered and note that, even though the parties in Biax Corp. v. Nvidia Corp. agreed that the court should enter a protective order, they disagreed on its terms.  See Reply at 4.  The Plaintiffs argue that:

> The fact that that the parties agreed on some elements of a protective order did not factor significantly in the BIAX [sic] court's opinion and there is no indication that the court would have reached a different conclusion if one of the parties disputed the general necessity for a protective order.

Reply at 4.  The Plaintiffs also dispute ASI New Mexico's view that the protective order in Biax Corp. v. Nvidia Corp. was more limited than the protective order that the Plaintiffs seek; in their view, the order that they seek is limited to "'facts about Plaintiffs' high school academic records,

discipline records, medical issues, and intimate details of Plaintiffs' personal lives.'"  Reply at 4 (quoting Motion at 3).  They assert that this proposed order is like the order in Biax Corp. v. Nvidia Corp., which "protected the parties' 'computer code and financial information.'"  Reply at 4 (quoting Biax Corp. v. Nvidia Corp., 2009 WL 3202367, at *1).  The Plaintiffs also argue that their "request is similar to the protective order in Gillard[ v. Boulder Valley SCh. Dist. Re.-2], where the court protected 'confidential information, including personal records, school records with personally identifiable information about students, and juvenile delinquency records.'"  Reply at 4-5 (quoting Gillard v. Boulder Valley Sch. Dist. Re.-2, 196 F.R.D. at 386).  Accordingly, in their view, the distinctions to which ASI New Mexico has pointed do not suggest that the Court should deny the Motion.  See Reply at 4-5.

With respect to the timing of the protective order, the Plaintiffs argue that rule 26(c) of the Federal Rules of Procedure does not limit the time within which the Court can enter a protective order; in their view, the Court has "'broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required.'"  Reply at 5 (quoting Seattle Times Co. v. Rinehart, 467 U.S. 20 (1984)(emphasis added in Reply)).  The Plaintiffs also argue that ASI New Mexico's argument that a protective order's only purpose is to facilitate discovery is incorrect: "ASI fails to recognize the need for protecting sensitive and personal information as the parties move toward the public filing of summary judgment and other motions that will set fort the facts discovered throughout the case."  Reply at 5.  They underscore that, "[r]egardless of how a protective order might affect discovery, Plaintiffs still have substantial privacy interests in the information at issue."  Reply at 5.

The Plaintiffs underscore that their purpose is to prevent sensitive information from being publicly disseminated.  See Reply at 5.  The Plaintiffs assert that they do not suspect that the

- 12 -

"Defendants would voluntarily or unnecessarily disclose personal or sensitive information.  For example, Plaintiffs assume that Defendants will comply with the strict requirements for schools created by the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, *et seq.*[("FERPA")]"  Reply at 5-6.  The Plaintiffs nonetheless argue that the media is interested in the case and that "it will report on aspects of the case with even the smallest news value."  Reply at 6 (citing T.S. Last, Girl's Diary is Evidence in Capital High Lawsuit, Albuquerque J., Sept. 22, 2013,     http://www.abqjournal.com/267303/north/girls-diary-is-evidence-in-capital-high-lawsuit.html, filed January 27, 2014 (Doc. 172-1)("Attorneys representing Santa Fe Public Schools were allowed access to the entire private journal of one of four female students who sued the school district after claiming they were subject to 'offensive and degrading' searches while entering the Capital High School prom in April 2011.").  According to the Plaintiffs, this news coverage motivated their quest for a protective order, and, therefore, "[t]he basis and timing of Plaintiffs' request for a protective order are substantial and justified."  Reply at 6.

The Plaintiffs also argue that ASI New Mexico exaggerates the burdens of complying with this order.  See Reply at 6.  They state that there are many documents about which the parties would probably agree, and argue that "the Court would only become involved if a document or information is marked as confidential is used **and** the parties disagree about the confidential nature of the document or information."  Reply at 6 (emphasis in original).  They contend that they "anticipate that few, if any, of those disputes would have to be brought to the Court for resolution."  Reply at 6.  In their view, the proposed protective order would "create an orderly and efficient process for ensuring the confidentiality of sensitive and personal information just as similar orders have regularly done in district courts around the country."  Reply at 6-7.  Accordingly, the Plaintiffs ask the Court to grant their Motion.

- 13 -

The Court held a hearing on January 31, 2013.  See Transcript of Hearing, taken January 31, 2013 ("Tr.").[2]  The Court first offered its thoughts that, although the Defendants were correct that the Motion comes late in the case, there is a legitimate concern about publicity -- particularly given that the case involves public money and that the case had received media coverage that the Court had not seen.  See Tr. at 9:24-10:11 (Court).  The Court stated that, although it could not "control the world," the parties need not "have stuff in the Court record that just invites curious reading about somebody's life."  Tr. at 10:12-15 (Court).  The Court suggested that, although a protective order creates some problems late in the case that it might not have caused earlier in the case, those problems probably were manageable.  See Tr. at 10:15-20 (Court).  Accordingly, the Court stated that it was inclined to grant the Motion, but wondered if the parties could agree what would be in the order.  See Tr. at 10:21-22 (Court).

The Court acknowledged the disadvantage at which the parties were put, given that these matters usually arose at the start of a case, and that most parties generally agree to enter the order -- particularly because one party, usually the defendant, is stating that it will not give up certain material unless the Court enters a protective order, and the other party, usually the plaintiff, decides to live with the protective order in exchange for the information.  See Tr. at 10:23-11:11 (Court).  In this situation, by contrast, "we've lost the ability to have the quid pro quo. You've" -- referring to the Plaintiffs -- "already produced the material," and, therefore, the Defendants do not "have a lot of incentive to cooperate with the protective order."  Tr. at 11:10-15 (Court).  The Court, nonetheless, stated that it thought the information should probably come under some form of a protective order, but asked if the parties could agree on what would be covered "rather than giving the plaintiff . . . carte blanche to go back and designate everything in

---

[2] The Court's citations to the transcript of the hearing reflects the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

the world confidential and make it difficult for [the parties] to file your motions and go to trial."
Tr. at 11:14-21 (Court).  The Court suggested that, despite not being familiar with the models
that the Plaintiffs used, it did not have problems with the Plaintiffs' form of order that the
Defendants might have, but it indicated that the Defendants could raise concerns with the
proposed order's mechanisms.  See Tr. at 11:22-12:4 (Court).  The Court, therefore, suggested
that the Plaintiffs identify what categories of information they would want to put under a
protective order and that the Defendants could identify ways the parties could improve the
mechanisms in the protective order.  See Tr. at 12:5-11 (Court).

The Plaintiffs asserted that they had three basic categories in mind: (i) school records,
including grades and discipline records; (ii) medical records which the Defendants subpoenaed
directly from medical providers; and (iii) given that "two of the plaintiffs were subjected to
sexual assaults when they were minors" and "testified about them in their depositions," "the
actual records and then any reference to them in the depositions."  Tr. at 12:15-13:6 (Colfax,
Court).  The Court asked, administratively, how the mechanism would work: for example, if a
party quotes a deposition, whether the party must file the document under seal.  See Tr. at 13:10-
14 (Court).  The Plaintiffs asserted that "the initial burden would be on us . . . to identify those
categories," to label them as subject to a protective order, and then, if there were to be a public
filing, "those aspects of the exhibits would be filed under seal."  Tr. at 13:15-22 (Court).  The
Plaintiffs stated that, as the order is structured now, with respect to briefing, the parties would
file two briefs: one filed publicly, with the protected information removed, and one filed with the
Court.  See Tr. at 13:21-25 (Colfax).

The Court asked if the parties could agree that no one would discuss the medical records,
the school records, or information about the sexual assault in a publicly filed brief, and, if it is

necessary to discuss those matters in a brief, the parties would file one copy under seal and one public version. See Tr. at 14:1-11 (Court). The Plaintiffs agreed, with the added request that this Memorandum Opinion and Order not be made public, particularly with respect to the sexual assault. See Tr. at 14:12-16 (Colfax). The Court agreed, and asked Defendants Santa Fe Public Schools Board of Education, Bobbie J. Gutierrez, Melanie Romero, and Leslie Kilmer (collectively "SFPS Defendants") if they thought the Court's proposed solution would work; they stated that it was acceptable in part. See Tr. at 14:17-22 (Court, Logan). The SFPS Defendants asserted that they were sensitive to the information about London's past, but noted that the Plaintiffs sued them for, in substantial part, emotional damages, and stated that she did not receive treatment for any alleged past problems. See Tr. at 14:22-15:3 (Logan). The SFPS Defendants stated that they have a right to defend against her claim related to emotional problems; they stated that they do not intend to publish the information. See Tr. at 15:1-7 (Logan). The Court stated that it did not think that the Plaintiffs were asserting that the SFPS Defendants could not use that information at trial, but just sought a way to handle the problem through briefing. See Tr. at 15:8-13 (Court). The SFPS Defendants asked, and the Court agreed, that this arrangement would not go through trial. See Tr. at 15:14-15 (Logan, Court). The Court stated that what would go into the order is that the parties agreed that, at the present time, the approach would work, without prejudice to the SFPS Defendants renewing their request to use information down the road; the Plaintiffs agreed. See Tr. at 15:16-23 (Court, Colfax).

The SFPS Defendants said that they understood where the parties were on the medical records, but asked for clarification regarding the school records, stating that the Plaintiffs had argued that they "were just stellar students and perfect citizens of the school, that if anybody had been searched it shouldn't have been them." Tr. at 15:24-16:4 (Logan). The SFPS Defendants

stated that the Plaintiffs had put their school records at issue and stated that, if the Plaintiffs could identify particular things in their record that were prejudicial or extraordinarily embarrassing, the SFPS Defendants would probably agree to the procedure.  See Tr. at 16:5-11 (Logan).   The Court asked if there was anything specific about which the Plaintiffs were concerned, if they were good students.  See Tr. at 16:12-14 (Court).  The Plaintiffs stated that, even if the Plaintiffs had perfect grades, they still did not want to have "their report cards floating around in the public record"; moreover, they pointed out that FERPA probably requires that information to remain private.   Tr. at 17:15-19 (Colfax).  The Plaintiffs' counsel confirmed that the information had been produced to the Plaintiffs.  See Tr. at 16:20-23 (Court, Colfax).

The Court stated that the SFPS Defendants could use the information as they wish in the briefing, but that they should restrict what would be publicly disclosed.  See Tr. at 16:14-17:4 (Court).  Acknowledging that it did not know whether the school records would be prejudicial to the Plaintiffs, the Court stated that it would extend the order to their school records.  See Tr. at 17:3-9 (Court).   After a brief discussion, the parties agreed that they did not need to write different briefs, but could create one brief of which they filed two versions: an unredacted version filed under seal and a redacted version filed publicly.  See Tr. at 17:10-24 (Logan, Court, Colfax).  The Court confirmed with the courtroom deputy that the Court's filing system could accommodate this request, as long as a Court order is in place.  See Tr. at 17:25-18:5 (Court).

ASI New Mexico stated that the approach generally worked for it, but argued that the categories seemed unfairly broad and that breadth would leave potential for confusion about what had been designated as confidential.  See Tr. at 18:12-19:2 (Tucker, Court).  It noted that the day of the hearing was also the last day of discovery and that much information had been in the record for some time, none of which had been designated confidential.  See Tr. at 19:2-7

(Tucker). It stated that the Plaintiffs know what their concerns are and that they should identify specific items "to avoid having to come back here to have to challenge confidentiality designations." Tr. at 19:7-11 (Tucker). The Court stated that the categories struck it as rather discrete; in its view, ASI New Mexico could write its briefs however it wanted, but redact the maters within the order's parameters. See Tr. at 19:12-24 (Court). It stated that, if any party had concerns, it could call the Court, but that the proposed categories were sharper than many protective orders with which the Court had issues. See Tr. at 19:24-20:3 (Court).

ASI New Mexico raised a concern with respect to the Plaintiffs' proposed protective order that related to the use of information at trial, and the Court stated that it was not "going there yet":

> Mr. Colfax may want to come back and say well here's how he wants to deal with stuff at trial. I'm sort of denying that portion of the motion without prejudice but we're kind of just coming up with a bit of a gentleman's agreement about how we're going to get through this, the briefing stage. Then if we go to trial we'll come back and figure ought to work with it so that paragraph will not be in there.
>
> MR. TUCKER: Thank you, Your Honor. And this order is not going to be entered.
>
> THE COURT: The one that's attached will not be entered. I'll prepare my own reflecting our agreement today.
>
> MR. TUCKER: All right, thanks, Your Honor.

Tr. at 20:13-21:1 (Court, Tucker). ASI New Mexico raised its argument about timeliness; the Court stated that it was "a little late, but the diary came up late, too." Tr. at 21:4-9 (Tucker, Court). The Court noted that this approach is a bit unusual, given that usually defendants and not plaintiffs seek protective orders. See Tr. at 21:7-16 (Court). ASI New Mexico asked, and the Court confirmed, that the only limits on the parties' use of the Plaintiffs' deposition testimony dealt with the three categories that the Court had outlined. See Tr. at 21:17-22:3 (Tucker, Court).

- 18 -

ASI New Mexico noted that the Plaintiffs had referred to sensitive items of testimony that did not relate to sexual assault but only to the Plaintiffs' personal lives, and asked if the Court's order would include those matters; the Court indicated that the Plaintiffs had agreed that the parties would limit the order to the three categories that the Court had outlined.  See Tr. at 22:4-15 (Tucker, Court).

The SFPS Defendants asked if, given that they were limited using the Plaintiffs' school records, the Plaintiffs would also be limited in a similar way; the Court stated:

> THE COURT:  Well, be fair, just be fair, I mean you know, don't let's try not to litigate this thing in the press, and don't put the defendants in a box.  If you decide you're going to [open up about] students and use those sort of things maybe you ought to blacken those things out.  Just think about if it's the Journal North up there reading these briefs and opinions sort of balance it.  When I write an opinion on this case[, I will ] file the whole thing under seal[, and] I'll send it to you and if you tell me what you want redacted from the public one I'll give you 10, 14 days.  Does that work?
>
> MR. LOGAN: That works.

Tr. at 23:1-13 (Court, Logan).

The Court stated that it would try to enter the order soon, but instructed the parties to proceed as if it were entered.  See Tr. at 23:17-23 (Court).

## LAW REGARDING PROTECTIVE ORDERS

"Federal district courts have broad discretion over discovery."  Morales v. E.D. Etnyre & Co., 229 F.R.D. 661, 662 (D.N.M. 2005)(Browning, J.).  The trial court has discretion to grant a protective order pursuant to rule 26(c) of the Federal Rules of Civil Procedure.  See Morales v. E.D. Etnyre & Co., 229 F.R.D. at 663.  Rule 26(c) provides that, upon a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," which may include forbidding disclosure or discovery. Fed. R. Civ. P. 26(c)(1)(A).  Accord Miller v. Regents of the Univ. of Colo., 188 F.3d 518, 1999

WL 506520, at *12 (10th Cir. 1999)(unpublished)[3](reasoning that "[t]he district court is in the best position to weigh these variables and determine the appropriate limits because, unlike an appellate court, the district court has the ability to view firsthand the progression of the case, the litigants, and the impact of discovery on parties and nonparties").

"It is the party seeking the protective order who has the burden to show good cause for a protective order." Velasquez v. Frontier Med. Inc., 229 F.R.D. 197, 200 (D.N.M. 2005)(Browning, J.).  The party seeking the protective order must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n.16 (1981)(internal quotation marks omitted).

Although rule 26(c) is silent regarding the time within which the movant must file for a protective order, "the United States Court of Appeals for the Tenth Circuit has held that a motion under rule 26(c) for protection . . . is timely filed if made before the date set for production." Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 2383822, at *5 (D.N.M. June 8, 2012)(internal quotation marks and brackets omitted)(citing In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 669 F.2d 620, 622 n.2 (10th Cir. 1982)).

---

[3] Miller v. Regents of the Univ. of Colo. is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Miller v. Regents of the Univ. of Colo. has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

## ANALYSIS

Pursuant to the parties' agreement, the Court will grant the Motion in part and deny it in part.  The parties must file any briefing that relates to the Plaintiffs' school records, their medical records, or any sexual assaults in their backgrounds in the way the Court has instructed.  That is, they must file an unredacted version under seal and a second, redacted version publicly.  This order does not extend through trial; it only governs the parties' conduct through briefing.

**IT IS ORDERED** that the Plaintiffs' Motion for Entry of Protective Order, filed January 3, 2014 (Doc. 163), is granted in part and denied in part.  The parties must file any briefing that relates to the Plaintiffs' school records, their medical records, or any sexual assaults in their backgrounds in the way the Court has instructed.  That is, they must file an unredacted version under seal and a second, redacted version publicly.  This order does not extend through trial; it only governs the parties' conduct through briefing.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Aimee Bevan
Friel & Levy, P.C.
Santa Fe, New Mexico

--and--

Megan Cacace
Relman, Dane & Colfax PLLC
Washington, D.C.

--and--

Reed N. Colfax
Relman, Dane & Colfax PLLC
Santa Fe, New Mexico

    *Attorneys for the Plaintiffs*

Andrew M. Sanchez, Sr.
Matthew Lee Campbell
Cuddy & McCarthy, LLP
Albuquerque, New Mexico

-- and --

Gerald A. Coppler
Coppler Law Firm, P.C.
Santa Fe, New Mexico

*Attorneys for Defendants Santa Fe Public Schools*
  *Board of Education, Barbara Gudwin, Glenn Wikle,*
  *Linda Trujillo, Frank Montano, Steven J. Carrillo,*
  *Bobbie J. Gutierrez, and Melanie Romero*

Robert Conklin
Robin A. Goble
Matthew Thomas Tucker
Conklin, Woodcock & Zeigler, P.C.
Albuquerque, New Mexico

*Attorneys for Defendant ASI New Mexico, LLC*